517 A.2d 730

**Lynard TUCKER**

v.

**FIREMAN'S FUND INSURANCE COMPANY.**

**No. 32, Sept. Term, 1986.**

Court of Appeals of Maryland.

Nov. 24, 1986.

70

Dennis F. O'Brien (White, Mindel, Clarke & Hill on the brief), Towson, for appellant.

John J. Schneider (Clifford L. Hardwick, Hardwick, Tripoda & Harris, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

MURPHY, Chief Judge.

Under Article 48A, § 539(a) of the Maryland Code (1957, 1986 Repl.Vol.), all motor vehicle liability insurance policies issued, sold, or delivered in this State after January 1, 1973 must contain personal injury protection (PIP) provisions affording minimal medical, hospital, lost income, and disability benefits to covered persons "injured in any motor vehicle accident." Among the individuals who may receive these benefits are:

> "the named insured and members of his family residing in his household ..., [and] other persons injured while occupying the insured motor vehicle as a guest or passenger, or while using it with the express or implied permission of the named insured ..., and *pedestrians injured in an accident in which the insured motor vehicle is involved* or individuals injured in, on, or alighting from any other vehicle operated by animal or muscular power in an accident in which an insured vehicle is involved." (Emphasis added.)

The question presented in this case is whether an individual struck and injured by a car while sitting on a stool in a parking lot attendant's booth may be considered a "pedes-

trian" within the meaning of § 539 and thus eligible to
receive PIP benefits.

## I.

The case arose from a motor vehicle accident on February
11, 1982, in a garage where appellant Lynard Tucker was
employed as a parking lot attendant. On the day of the
accident, Tucker was sitting on a stool inside the attend-
ant's booth when the booth was struck by an automobile
driven by Barbara Eburg and insured by appellee Fireman's
Fund Insurance. The insured's policy contained the re-
quired PIP coverage which Tucker sought to recover from
Fireman's Fund.

After the insurer denied his claim, Tucker sued Fireman's
Fund in the District Court of Maryland. That court held
that Tucker was not entitled to PIP benefits under the
no-fault insurance provisions of § 539 because he was not a
pedestrian when the accident occurred. On appeal, the
Circuit Court for Baltimore City affirmed. We granted
certiorari to review the important issue raised in the case.

## II.

Tucker argues that "pedestrian," as used in § 539, was
intended by the General Assembly "to delineate between
persons operating and/or occupying vehicles and those who
are not." Tucker thus claims that he is within the class of
persons protected under § 539. Fireman's Fund, on the
other hand, argues that the legislature intended that the
undefined term "pedestrian" in § 539 would be afforded the
same meaning as that earlier enacted and contained in Code
(1984 Repl.Vol.), § 11–145 of the Transportation Article,
namely that "[p]edestrian means an individual afoot." To
otherwise define the term "pedestrian" in § 539, the appel-
lee suggests, was unnecessary. It maintains that the
Transportation Article, which contains the motor vehicle
laws of the State, and § 539 of the Insurance Code entitled
"Motor Vehicle Casualty Insurance—Required Primary
Coverage" concern the same subject matter. Thus, it is
argued that the two statutes should be construed harmoni-

ously so that "pedestrian" would have the same meaning in both statutes. Moreover, Fireman's Fund urges that the common meaning of "pedestrian" is the same as the § 11-145 definition and should be applied in any event. Because Tucker was not "afoot" when he was injured, the appellee contends that he was not a pedestrian within the contemplation of § 539 and therefore was not entitled to PIP benefits.

## III.

In construing the meaning of a word in a statute, the cardinal rule is to ascertain and carry out the real legislative intention. *Reid v. State,* 302 Md. 811, 816, 490 A.2d 1289 (1985); *Atlantic Richfield Co. v. Sybert,* 295 Md. 347, 361, 456 A.2d 20 (1983); *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 388-89, 444 A.2d 1024 (1982); *Mauzy v. Hornbeck,* 285 Md. 84, 92, 400 A.2d 1091 (1979). The primary source of legislative intent is, of course, the language of the statute itself. *Auto. Trade Ass'n. v. Harold Folk Enter.,* 301 Md. 642, 653, 484 A.2d 612 (1984); *Haskell v. Carey,* 294 Md. 550, 556, 451 A.2d 658 (1982); *Bledsoe v. Bledsoe,* 294 Md. 183, 189, 448 A.2d 353 (1982); *State v. Berry,* 287 Md. 491, 495, 413 A.2d 557 (1980). When the legislature has not defined a term, it should ordinarily be given its usual and natural meaning. *DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 717, 475 A.2d 454 (1984); *Brown v. State,* 285 Md. 469, 474, 403 A.2d 788 (1979); *Mauzy v. Hornbeck, supra,* 285 Md. at 84, 400 A.2d 1091; *Williams v. Loyola College,* 257 Md. 316, 328, 263 A.2d 5 (1970). Of course, where statutory provisions are clear and unambiguous, no construction or clarification is needed or permitted, it being the rule that a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation. *State v. Intercontinental, Ltd.,* 302 Md. 132, 137, 486 A.2d 174 (1985); *Hornbeck v. Somerset Co. Bd. of Educ.,* 295 Md. 597, 619, 458 A.2d 758 (1983).

"Pedestrian" is defined in Webster's Third New International Dictionary 1664 (1971) as "a person who travels on

foot," specifically as "one who walks for pleasure, sport, or exercise" and "one walking as distinguished from one travelling by car or cycle." Black's Law Dictionary 1019 (5th ed. 1979) similarly defines pedestrian as "[a] person traveling on foot." As already indicated, this definition is similar to that provided in § 11–145 of the Transportation Article.

■ That a term may be free from ambiguity when used in one context but of doubtful application in another context is well settled. *See Truck Ins. Exch. v. Marks Rentals*, 288 Md. 428, 433, 418 A.2d 1187 (1980); *Ebert v. Millers Fire Ins. Co.*, 220 Md. 602, 610, 155 A.2d 484 (1959). We are by no means persuaded that in defining the term "pedestrian" in § 11–145 of the Transportation Article, the legislature necessarily intended that same explicit definition to be utilized in applying the later enacted provisions of § 539. Section 11–145 is part of Subtitle 1 ("Definitions") of Title 11 of the Transportation Article; that title defines numerous words, providing in § 11–101 that "[i]n the Maryland Vehicle Law, the following words [*e.g.*, 'Pedestrian'] have the meanings indicated, unless the context requires otherwise." Section 539 of the Insurance Code, setting forth statutorily mandated insurance coverages in motor vehicle liability policies, is not so related to the motor vehicle laws of the State as to compel a like construction of terms used in the two statutes.

Nor do we think that a literal application of the word "pedestrian," in the context of its usage in § 539, was necessarily intended by the legislature in view of the unjust and unreasonable consequences that would obviously flow from such an interpretation. Construed literally, the term "pedestrian" would require an individual to be traveling on foot at the time of the accident contradistinguished from one who is, for example, seated or in a standing stationary position on a sidewalk adjacent to a road, when the accident occurred, or even a person struck by a motor vehicle while in a wheelchair next to the highway. Thus, under such a

limited application, an individual seated on the steps of a building in front of a public highway who is struck by a motor vehicle would be unable to collect PIP benefits while another individual walking on the steps of the same building would be covered.

We, of course, recognize the legislative right to draw lines distinguishing between covered and uncovered persons. We also recognize the rule that where a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment. *State v. Fabritz*, 276 Md. 416, 348 A.2d 275 (1975); *Height v. State*, 225 Md. 251, 170 A.2d 212 (1961). In such circumstances, the court, in seeking to ascertain legislative intent, may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense. *See Kindley v. Governor of Maryland*, 289 Md. 620, 426 A.2d 908 (1981); *B. F. Saul Co. v. West End Park*, 250 Md. 707, 246 A.2d 591 (1968); *Sanza v. Md. Board of Censors*, 245 Md. 319, 226 A.2d 317 (1967); *Truitt v. Board of Public Works*, 243 Md. 375, 221 A.2d 370 (1966).

## IV.

Maryland is one of twenty-eight jurisdictions which have enacted no-fault insurance plans.[1] The primary purpose of § 539 is "to assure financial compensation to victims of motor vehicle accidents without regard to the fault of a named insured or other persons entitled to PIP benefits."

---

1. These jurisdictions are the District of Columbia and Puerto Rico, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Kansas, Kentucky, Massachusetts, Michigan, Minnesota, New Hampshire, New Jersey, New York, North Dakota, Oregon, Pennsylvania, South Carolina, South Dakota, Texas, Utah, Virginia, and Wisconsin. In addition, Washington, through administrative regulation, has a no-fault plan in effect. Wash. Ins. Dept. Bulletin § 73–6 (1973). Three other states—Illinois, Nevada, and New Mexico—at one time

*Pennsylvania Nat'l. Mutual Casualty Ins. Co. v. Gartelman,* 288 Md. 151, 154, 416 A.2d 734 (1980). *See also Smelser v. Criterion Ins. Co., supra,* 293 Md. at 393, 444 A.2d 1024 (purpose of the no-fault insurance subtitle is to put a limited amount of money in the hands of an injured individual under certain circumstances without regard to whether another person is liable for the injuries which the claimant sustained); *Pfeffer v. State Auto. & Cas. Underwriters Ins. Co.,* 292 N.W.2d 743 (Minn.1980) (purposes of no-fault statute include encouraging promptness of payment for medical treatment, prevention of overcompensation for minor injuries, and relief of the economic distress of uncompensated victims).

The statutory delineation of persons covered by PIP benefits ranges from broad descriptions, *e.g.,* "victims" or "injured persons," used by four jurisdictions [2] and in the Uniform Motor Vehicle Accident Reparation's Act (UMVARA) [3] to more specific-type classifications of covered persons as in § 539 of the Maryland statute.

Nine jurisdictions include pedestrians as covered individuals but unlike Maryland, these no-fault statutes generally define a pedestrian, as in New Jersey, to mean "any person who is not occupying, entering into, or alighting from a vehicle." N.J.Stat.Ann. § 39:6A–2 (West Supp.1986). *See also* Colo.Rev.Stat. §§ 10–4–703(9) (1974); Conn.Gen.Stat. Ann. § 38–319(a)(1) (West 1985); Ga.Code Ann. §§ 33–34–2 (11) (1982); Ky.Rev.Stat.Ann. § 304.39–050(1) (Bobbs-Merrill 1981); N.D.Cent.Code § 26–41–03.13 (1977); Or.Rev.

also had no-fault plans in effect, but have since terminated them. *See generally* Dobbyn, "Genesis and Background—No-Fault Insurance," in 1 No-Fault and Uninsured Motorist Automobile Insurance §§ 4.00–.30[2] (B. Denkensohn ed. 1986).

**2.** Broad descriptions of individuals covered are used by the District of Columbia, Michigan, Minnesota, Pennsylvania, and Puerto Rico. *See* D.C.Code Ann. § 35–2102(34) (Supp.1986); Mich.Comp.Laws Ann. §§ 500.3109(2), .3112 (West 1983 and Supp.1986); Minn.Stat.Ann. §§ 65B.44, .46 (West 1986); P.R.Laws Ann. tit. 9, § 2052(10) (1976).

**3.** *See* UMVARA §§ 2(a), 4(c)(2), (3), 14 U.L.A. 59, 61–62 (1972).

Stat. § 743.800(7)(d) (1985); Utah Code Ann. §§ 31A–22–301(7), –308 (1986); *cf.* Mass.Ann.Laws Ch. 90, § 34A (Michie/Law. Co-op.1985) ("pedestrian" includes "persons operating bicycles, tricycles and similar vehicles and persons upon horseback or in vehicles drawn by horses or other draft animals"). Five other states do not use the term "pedestrian" in their no-fault statutes but provide that nonoccupants of a motor vehicle are entitled to recover PIP benefits under certain circumstances. *See* Ark.Stat.Ann. § 66–4014 (1980 and Supp.1985); Fla.Stat.Ann. § 627.736(1) (West Supp.1984); Kan.Stat.Ann. § 40–3107(f) (1981); 75 Pa.Cons.Stat.Ann. § 1713(a)(4) (Supp.1986); *cf.* Va.Code §§ 38.2–2201, –2202 (1986). Finally, five states, including Maryland, use pedestrian as a category of persons covered but do not define the term in the statute. *See* Del.Code Ann. tit. 21, § 2118(a)(2)(d), (e) (1985); Hawaii Rev.Stat. § 294–4 (1985); N.Y.Ins.Law § 5102(j), § 5103(a)(1) (Law. Co-op.1985); S.C.Code Ann. § 56–11–150 (Law. Co-op.1977).

## V.

Merely because the coverage provisions of § 539 are not couched in broad terms of "victims" or "injured persons," as in some state no-fault statutes, or that "pedestrian" is not explicitly defined, as in some other jurisdictions, in terms of persons not occupying, entering, or alighting from a motor or other covered vehicle, does not of itself mean that coverage for a "pedestrian" under § 539 was intended to be limited to persons injured only while actually traveling on foot. The purpose of § 539, as we earlier observed, is to award a measure of compensation "to victims of motor vehicle accidents" without regard to fault. *Pennsylvania Nat'l Mut. v. Gartelman, supra,* 288 Md. at 154, 416 A.2d 734. In view of that clear remedial purpose, *see DeJarnette v. Federal Kemper Ins. Co., supra,* 299 Md. at 725, 475 A.2d 454, a liberal construction of the statute is required. *Keesling v. State,* 288 Md. 579, 589, 420 A.2d 261 (1980). Considering the statutory scheme of § 539 in its entirety, and in light of its purpose—and in particular noting the use of the undefined term "pedestrian" in con-

trast to the all-encompassing coverage afforded persons injured while in a motor or other vehicle operated by animal or muscular power—we conclude that a doubt exists as to the precise meaning of the word "pedestrian" in § 539, a doubt that requires construction in effectuating the real legislative intention. In this regard, we think that the legislature, for coverage purposes, intended to include as a "pedestrian" under § 539 all persons not occupying, entering, or alighting from a motor or other covered vehicle without regard to whether, when struck, they were actually traveling on foot, standing in a stationary position, sitting, or, as here, within some structure.[4]

In *Braswell v. Burrus,* 13 Md.App. 513, 517, 284 A.2d 41 (1971), the court, in applying the definition of a "pedestrian" in § 11–145 of the Transportation Article, concluded that "[i]n the context of the motor vehicle laws, a pedestrian is a person on foot, as distinguished from one in or on a vehicle, on or near a public highway or other place where the motor vehicle laws apply." Included within this definition, according to the court, were "police officers, maintenance workers, and perhaps others, whose work requires their presence on a highway." 13 Md.App. at 517, 284 A.2d 41. In *Braswell,* therefore, the determinative factor in defining the reach of the term "pedestrian" under § 11–145 was the proximity of the individual to motor vehicles on the highway. *See also Gary Railways v. Dillon,* 228 Ind. 558, 92 N.E.2d 720, 722 (1950) ("The legislature [in a statute concerning pedestrians' right of way at intersections] was trying to protect people traveling on foot in attempting to cross highways at proper crosswalks and the word 'pedes-

---

**4.** For cases involving no-fault statutes of other jurisdictions where persons were injured by a motor vehicle while inside a home or other structure, *see Trinity Universal Ins. Co. v. Hall,* 690 P.2d 227 (Colo. 1984); *Smith v. Simpson,* 648 P.2d 677 (Colo.Ct.App.1982); *Olmstead v. Miller,* 383 N.W.2d 817 (N.D.1986); *cf. Fox v. State Auto. Mut. Ins. Co.,* 314 Pa.Super. 559, 461 A.2d 299 (1983) (insured who was injured when she fell on her stairs while investigating the car that had crashed into her living room was a "victim" within the no-fault act because the injury arose out of the use of a motor vehicle).

trian' was used in its common meaning as a person not in a vehicle, but merely traveling on foot.").

Other states have also expanded on the literal definition of pedestrian as used in vehicular and pedestrian traffic laws. Some courts have declined to give a literal meaning to the requirement of being actually "on foot." For example, in *Eichinger v. Krouse*, 105 N.J.L. 402, 144 A. 638 (1929), the New Jersey Court of Errors and Appeals stated:

"While it is true that a pedestrian is ordinarily understood to be one who travels on foot, nevertheless the mere circumstance that he or she has attached to his or her feet roller skates, or ice skates, or walks on stilts, or uses crutches, or is without feet and propels himself or herself along by means of a chair or by some other mechanical device, does not clothe him or her, in a broad and general sense, with any other character than that of a pedestrian." 144 A. at 639.

*See also Jermane v. Forfar*, 108 Cal.App.2d 849, 240 P.2d 351 (1952); *Pekter v. Price*, 206 N.J.Super. 355, 502 A.2d 1157 (App.Div.1985); *Leopold v. Williams*, 54 Ohio App. 540, 8 N.E.2d 476 (1936). *But see Moon v. Weeks*, 25 Md.App. 322, 334–35 n. 10, 333 A.2d 635 (1975) (child upon a sled on a street is not a "pedestrian" within the meaning of motor vehicle laws). Other courts have focused on the component of movement associated with being a pedestrian. In *Garlin v. Thomas*, 90 Ga.App. 835, 84 S.E.2d 491, 493 (1954), the court stated:

"As [correctly] used in the charge [to the jury], pedestrian designates not merely a person traveling along the highway on foot. It is used to designate one class of persons as distinguished from other classes and is used to categorize that class in order that the rights and duties of one class in relation to the other classes may have a clear definition in law. As used, pedestrian includes all persons on the streets and highways on foot whether they be walking, standing still, or performing labor."

In *See v. Willett*, 58 Wash.2d 39, 360 P.2d 592, 593 (1961), involving a definition of pedestrian identical to that in

§ 11–145 of the Maryland Transportation Article, the court determined that "the statutory definition of 'pedestrian' is broad encugh to include persons standing upon the highway, as well as those traversing it." *See also Peterson v. Continental Casualty Company,* 25 Utah 2d 408, 483 P.2d 445, 446 (1971) ("To say that a pedestrian is not a pedestrian if he stops walking is disconsonant with realism and the common connotation of the term."). These cases illustrate that the components of movement and of being on foot implied in the literal definition of "pedestrian" have not been strictly applied within the context of motor vehicle laws.

That the legislature intended the application of a similar rationale in its coverage of a "pedestrian" under § 539 is, we think, consistent with its real intention, even though arguably contrary to the literal meaning of the word. *See Holy Cross Hosp. v. Health Services,* 283 Md. 677, 393 A.2d 181 (1978). We therefore hold that Tucker was entitled to recover PIP benefits under the facts of this case.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR THE ENTRY OF JUDGMENT IN FAVOR OF THE APPELLANT UPON PROOF OF DAMAGES. COSTS TO BE PAID BY APPELLEE.