668 A.2d 1

Barry ROMM et ux.

v.

Lawrence L. FLAX et ux.

No. 50 Sept. Term, 1995.

Court of Appeals of Maryland.

Dec. 5, 1995.

Christopher B. Mead (London & Mead, on brief), Washington, DC, for Appellants.

Morton A. Faller (Meyer, Faller, Weisman and Rosenberg, P.C., on brief), Washington, DC, for Appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

The issue before us is whether Maryland Code (1974, 1988 Repl.Vol., 1994 Supp.) § 10–702 of the Real Property Article renders a residential real estate contract void under the circumstances of this case when the seller fails to provide a disclosure or disclaimer statement as required by the statute.

### I

On February 19, 1994, Lawrence and Elaine Flax (Flaxes) signed a contract to sell their home in Bethesda to Barry and Marcy Romm (Romms) for $439,000. The Montgomery County Association of Realtors form contract that the Flaxes signed included an addendum entitled "Notice of Purchaser's Right to Property Condition Disclosure Statement or Dis-

claimer Statement." The addendum included language accurately quoting the requirements of § 10–702:

> Purchaser is advised that under Maryland law (Real Property Article, § 10–702), he is entitled to receive from Seller a written residential property condition disclosure statement ... or a written residential property disclaimer statement.... Seller must deliver the completed disclosure or disclaimer statement to the Purchaser on or before the Purchaser's entering into a contract of sale.... *If the disclosure statement is delivered by the Seller later than three (3) days after the Seller enters into a contract of sale with the Purchaser, the contract is void.* A Purchaser who does not receive the disclosure statement on or before the execution of a contract by the Purchaser has the unconditional right, upon written notice to the Seller or Seller's agent, to rescind the contract of sale at any time before the receipt of the disclosure statement or within five (5) days following receipt of the disclosure statement and to the immediate return of any deposit. However, a Purchaser's right to rescind the contract terminates if not exercised before making a written application to a lender for a mortgage loan....

(emphasis added). The Flaxes did not provide, and the Romms did not request, a disclosure or disclaimer statement before signing the contract. The day after the parties executed the contract, the Romms' buyer-broker, Anita Tauber, delivered a blank disclosure statement to the Flaxes and requested that they complete the form. The Flaxes never provided the required disclosure or disclaimer statement and refused to allow inspection of the property, as required by the contract.

On February 24, 1994 the Romms' attorney requested, in writing, that the Romms be allowed to inspect the property. The Flaxes' attorney responded, on March 4, 1994, that the Flaxes' failure to provide a disclosure or disclaimer statement rendered the contract void. On March 17, 1994, the Romms filed a complaint and a motion for summary judgment in the Circuit Court for Montgomery County seeking specific perfor-

mance of the contract and money damages. The Flaxes answered that their failure to provide a disclosure or disclaimer statement rendered the contract void. A circuit court judge, on July 1, 1994, denied the Romms' summary judgment motion.

The Flaxes thereafter filed a motion for summary judgment which circuit court Judge Durke G. Thompson granted on December 12, 1994; he held that the failure of the Flaxes as sellers to provide the required disclosure or disclaimer statement rendered the contract void. The Romms appealed to the Court of Special Appeals. Before argument in that court, we granted certiorari.

## II

"In construing the meaning of a word in a statute, the cardinal rule is to ascertain and carry out the real legislative intention." *Tucker v. Fireman's Fund Insurance Co.*, 308 Md. 69, 73, 517 A.2d 730 (1986). We start by examining the language of the statute. *Id.* We are not constrained, however, by the "the literal or usual meaning" of the terms at issue. *Id.* at 75, 517 A.2d 730. "A dictionary is a starting point in the work of statutory construction, but not necessarily the end." *Morris v. Prince George's County*, 319 Md. 597, 606, 573 A.2d 1346 (1990). "[W]here a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment." *Tucker, supra,* 308 Md. at 75, 517 A.2d 730. In construing statutory language, we seek to avoid results which are "illogical," "unreasonable," or "inconsistent with common sense." *Id.; see also Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. 505, 516, 525 A.2d 628 (1987).

At issue here is the meaning of the term "void" in the context of its usage in § 10–702(g)(1) of the Real Property Article. Section 10–702(b) and (e) require the seller of single family residential real property to complete and deliver to the

purchaser a disclosure or disclaimer statement on or before entering into a contract of sale. Section (g)(1) provides:

> (g) *Effect of failure to deliver a statement.*—(1) If the disclosure statement is delivered later than 3 days after the vendor enters into a contract of sale with the purchaser, the contract is void.[1]

*Webster's Third New International Dictionary* (1981) defines "void" as "a: of no legal force or effect" and "b: VOIDABLE." Since the term "void" is susceptible of more than one reasonable meaning and is therefore ambiguous, we must examine it in the context of the entire statute to ascertain the legislative intent and to avoid an unreasonable result. *Tucker, supra,* 308 Md. at 75, 517 A.2d 730; *Prince George's County v. Brown,* 334 Md. 650, 659, 640 A.2d 1142 (1994).

What is now section 10–702 originated at the 1993 session of the General Assembly as House Bill 1210 and Senate Bill 707. The House Bill, as amended, was signed by the Governor and became effective on January 1, 1994, as ch. 640 of the Acts of 1993. According to its title, the bill was intended, in part, "FOR the purpose of requiring a vendor of certain real property to deliver to a purchaser a certain disclosure statement or disclaimer statement," and "FOR the purpose of . . .

---

1. The remainder of the section provides:

 (2) A purchaser who does not receive the disclosure statement on or before entering into the contract of sale has the unconditional right, upon written notice to the vendor or the vendor's agent:

 (i) To rescind the contract of sale at any time before the receipt of the disclosure statement or within 5 days following receipt of the disclosure statement . . .

 (3) A purchaser's right to rescind the contract of sale under this subsection terminates if not exercised before making a written application to a lender for a mortgage loan . . .

 (j) *Waiver of purchaser's rights.*—(1) The rights of a purchaser under this section may not be waived in the contract of sale and any attempted waiver is void.

 (2) Any rights of the purchaser to terminate the contract provided by this section are waived conclusively if not exercised before:

 (i) Closing or occupancy by the purchaser . . .

 (k) *Notice of purchaser's rights.*—Each contract of sale shall include a conspicuous notice advising the purchaser of the purchaser's rights as set forth in this section.

providing that a purchaser has a right to rescind a contract of sale of real property under certain circumstances." The bill, therefore, created rights of rescission in purchasers of real property, but not sellers. Section (g)(2) allows purchasers to rescind contracts at certain times; sections (f) and (g)(3) limit purchasers' rescission rights; and section (j) limits waiver of purchasers' rights. *See supra* note 1. There is no evidence of a legislative intent to grant sellers a right of rescission.

The Flaxes' proposed interpretation of the statute conflicts with the clear legislative intent to require sellers to deliver a disclosure or disclaimer statement and to grant rescission rights to purchasers only. If "void" is read to mean "of no legal force or effect," the statute would effectively grant sellers of real property a right of rescission and allow them to benefit from their failure to comply with the law. The Attorney General said:

> [I]t is hard to see why a law intended to aid buyers would victimize the unwary buyer by giving a seller who entered a contract without delivering a statement the great advantage of three risk-free days to look around for a better offer; the seller could then deprive the buyer of the benefit of the bargain simply by doing nothing, if "void" were read literally.

79 Op.Att'y Gen. ——, 6 n. 5 [Opinion No. 94–017 (March 11, 1994)]. In other words, if "void" is read to mean "of no legal force or effect," where a seller enters into a contract without providing the required statement, the seller may rescind the contract by refusing to deliver the statement for three days. Thus, to so read the term "void" literally is inconsistent with the legislative intent to grant rescission right to purchasers only.

Indeed, it would also transform real estate contracts, signed before delivery of a disclosure or disclaimer statement, into option contracts exercisable by sellers only. Provisions, such as the statute at issue here, which render contracts "null and void" if some performance is not rendered, "seldom mean[ ] what [they] appear[ ] to say. Generally, what is meant is that

the duty of one of the parties shall be conditional on" the other party's performance. *Corbin on Contracts* § 761 at 517–18 (1960). Here, the purchaser's duty to perform under the contract is conditioned on the seller's providing the required statement. If "void" is read to mean "of no legal force or effect," "the contract would in effect be an option contract," the option being held by the seller. *Id.* "If he concludes that the contract is not to his advantage, all that he needs to do is to withhold [the required statement]; whereupon the contract becomes 'null and void' and incapable of enforcement by either party." *Id.* Corbin continues:

> Accompanying factors, on which interpretation must always be largely dependent, will almost always show that the parties did not use "null and void" with such a meaning. The provision is put in to limit the duty of the [purchaser]; ... it is not to give a loophole of escape from the contract to the [seller]. It is meant that the [purchaser]'s duty is conditional on the return performance, that if [the required statement] is not [prepared] he himself does not have to [perform].

*Id.* Since there is no evidence that the legislature intended to create a new class of option contracts, an interpretation of the term "void" to mean "of no legal force or effect" is unreasonable.

We have refused to interpret "null and void" provisions of contracts literally where to do so would allow one party to frustrate enforcement of a contract by preventing a condition precedent. *Brewer v. Sowers*, 118 Md. 681, 86 A. 228 (1912), concerned an option contract which provided that the agreement would become "null and void" if the purchaser did not make payment by a certain date. The purchaser made several attempts to pay, but the seller avoided collecting. This Court, refusing to interpret the terms "null and void" to mean "of no legal force or effect," granted specific performance to the purchaser, saying:

> To deny Sowers [buyer] relief under such circumstances on the ground that the balance of the purchase money was not actually paid by the time named in the agreement, would

not only be without precedent, but contrary to every principle of justice and equity which are supposed to control Courts of Equity.

*Id.* at 686, 86 A. 228.

Again, in *Kimm v. Andrews,* 270 Md. 601, 313 A.2d 466 (1974), we refused to read the terms "null and void" literally where a seller failed to show the property boundaries to the purchasers as required by the contract. The seller's failure simply relieved the purchasers of their obligation to tender payment on the closing date, but did not bar the availability of specific performance. *Id.*

Similarly, in *Twining v. National Mortgage Corp.,* 268 Md. 549, 302 A.2d 604 (1973), Mrs. Twinning, a mortgagor, argued that a mortgage contract was void because it was never delivered to National Mortgage, the mortgagee, as required by the contract. We disagreed and ruled:

This provision obviously was intended as a shield for the protection of National Mortgage and not as a sword for the use of Mrs. Twining against National Mortgage. It would be an odd rule of law that would permit Mrs. Twining to avoid liability here because National Mortgage failed to insist upon performance of a provision obviously meant for its protection.

*Id.* at 555, 302 A.2d 604; *see also Stewart v. Griffith,* 217 U.S. 323, 329, 30 S.Ct. 528, 54 L.Ed. 782 (1910) ("[T]he word 'void' means voidable at the vendor's election. . . ."); *United States v. New York & P.R.S.S. Co.,* 239 U.S. 88, 93, 36 S.Ct. 41, 60 L.Ed. 161 (1915) ("Even when a statute in so many words declares a transaction void for want of certain forms, the party for whose protection the requirement is made often may waive it, "void" being held to mean only voidable at the party's choice."); *Archway Motors, Inc. v. Herman,* 37 Md.App. 674, 687, 378 A.2d 720 (1977); 79 Op.Att'y Gen., *supra; cf. Daugherty v. Kessler,* 264 Md. 281, 285, 286 A.2d 95 (1972) ("Courts have used the words 'void,' 'voidable,' 'invalid' and 'unenforceable' imprecisely, and when they say an oral contract is void, usually do not mean it except to a limited extent."); *Chapman*

*v. Ford,* 246 Md. 42, 52, 227 A.2d 26 (1967); 13 A.L.R. 4th 927 (1982).

▉▉▉ Interpreting "void" to allow a seller to avoid a contract by refusing to comply with the law would be inconsistent with prior cases of this Court. We presume that the legislature is aware of our decisions, *Harris v. State,* 331 Md. 137, 152 n. 8, 626 A.2d 946 (1993), and construe enactments in derogation of the common law strictly. *James v. Prince George's County,* 288 Md. 315, 335, 418 A.2d 1173 (1980). Since there is no clear evidence of a legislative intent to alter the common law, we conclude that the legislature did not intend for "void" to be interpreted literally.

▉▉▉ A literal interpretation of the term "void" would grant sellers a right of rescission, allow them to benefit from noncompliance with the duty to prepare a disclosure or disclaimer statement, create a new class of option contracts, and alter the common law. These results are unreasonable and inconsistent with the legislature's intention in passing § 10–702. We, therefore, hold that the term "void" in Maryland Code § 10–702(g)(1) of the Real Property Article was intended to mean "voidable at the option of the purchaser" and, thus, does not render a residential real estate contract void when the seller fails to deliver a disclosure or disclaimer statement as required by the statute.[2]

*JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH*

---

**2.** Since the language of the contract mirrors the statute, as is required by § 10–702(k), our interpretation of the statutory language governs our interpretation of the contract.

The Governor, on May 18, 1995, signed into law Senate Bill 437, effective on October 1, 1995, which deletes section (g)(1) of the statute. Ch. 384 of the Acts of 1995. Since this subsequent legislative action may arguably support either party's argument, we do not consider it a reliable source of legislative intent in the passage of the 1993 bill. *Cf. American Recovery Co. v. Dep't of Health,* 306 Md. 12, 18, 506 A.2d 1171 (1986) ("[S]ubsequent amendment … of a statute is not controlling as to the meaning of the prior law."); Jack Schwartz & Amanda Stakem Conn, *The Court of Appeals at the Cocktail Party: The Use and Misuse of Legislative History,* 54 Md.L.Rev. 432 (1995).

*DIRECTIONS TO ENTER JUDGMENT IN FAVOR OF THE APPELLANT; COSTS IN THE CIRCUIT COURT AND IN THIS COURT TO BE PAID BY THE APPELLEE.*