REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1772

September Term, 2013

---

CHARLES ROBERT PHILLIPS

v.

STATE OF MARYLAND

---

Wright,
Hotten,
Alpert, Paul E.
    (Retired, Specially Assigned),

JJ.

---

Opinion by Hotten, J.

---

Filed:  October 7, 2014

Appellant was convicted of first degree murder and armed robbery by a jury in the Circuit Court for Worcester County. Following a successful appeal and remand by the Court of Appeals, he was re-tried and convicted of first degree murder, armed robbery, and misdemeanor theft. The court sentenced him to life without the possibility of parole and a consecutive twenty year sentence. Appellant appeals and presents the following questions for our review:

1. Where appellant successfully overturned his conviction on appeal and was retried, did the sentencing court err in increasing appellant's sentence on the first degree murder count from life with the possibility of parole after his first trial to life without the possibility of parole after the retrial?

2. Is appellant entitled to a new sentencing where one of the reasons relied upon by the State in seeking an increased sentence was incorrect?

For the reasons that follow, we shall affirm the judgments of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

On April 8, 2009, appellant, Charles Robert Phillips, was convicted in the Circuit Court for Worcester County of first degree murder, and robbery with a deadly weapon of William Nibblett. The court sentenced him to life imprisonment with the possibility of parole for the murder and to a consecutive twenty year sentence for the armed robbery. Appellant appealed.

During the pendency of his appeal, appellant was incarcerated for several years in the North Branch Correctional Institute ("North Branch") where he received two disciplinary infractions for possessing weapons. On December 2, 2009, correctional officers searched appellant's cell and located a weapon made from a piece of a cup inside of appellant's trash can. On December 4, 2009, correctional officers discovered a second

knife-like weapon hidden within appellant's mattress. Appellant received an internal administrative hearing where both hearing officers found appellant guilty and imposed sanctions.[1] This Court affirmed his convictions in an unreported opinion and the Court of Appeals granted *certiorari*. In *Phillips v. State*, 425 Md. 210 (2012), the Court reversed appellant's convictions and remanded for a new trial.

In June of 2012, after appellant's case was remanded for a new trial, he was transferred to Worcester County Jail ("Worcester Jail"). While there, following a verbal confrontation between several inmates, appellant was strip searched and correctional officers discovered a concealed weapon. In June of 2013, appellant was re-tried for first degree murder and the related robbery offenses. A jury found him guilty of murder, armed robbery and misdemeanor theft. Prior to sentencing, the State filed a motion seeking an enhanced sentence pursuant to Maryland Code, (1974, Repl. Vol. 2013) §12-702(b) of the Courts and Judicial Proceedings Article [hereinafter Cts. & Jud. Proc.], which states:

> (b) *Remand for sentence or new trial; limitations on increases in sentences.* – If an appellate court remands a criminal case to a lower court in order that the lower court may pronounce the proper judgment or sentence, or conduct a new trial, and if there is a conviction following this new trial, the lower court may impose any sentence authorized by law to be imposed as punishment for the offense. However, it may not impose a sentence more severe than the sentence previously imposed for the offense unless:
>
> (1) The reasons for the increased sentence affirmatively appear;

---

[1] For the first offense, appellant received forty five days in segregation and one hundred and eighty days without visitation privileges. For the second violation, he received one hundred and sixty three days in segregation and one year without visits.

(2) The reasons are based upon additional objective information concerning identifiable conduct on the part of the defendant; and

(3) The factual data upon which the increased sentence is based appears as part of the record.

The State argued that the three weapons related disciplinary infractions were sufficient to warrant an increase in sentence. Appellant argued that the statute as written was unconstitutional. Following oral arguments, the court granted the motion, which permitted the State to present evidence at the sentencing hearing for an enhanced sentence.

At sentencing, the State presented several witnesses who testified regarding appellant's disciplinary violations, including correctional officers and administrative hearing officers. Appellant did not deny that he possessed the weapons or that he was found guilty by the administrative hearing officers. Rather, he contended that personal safety concerns were the motive behind his possession of the weapons. He alleged that he was unaffiliated with a gang; was perceived as a target within the correctional institutions; and that the weapons were a preventative measure if he was attacked. He also noted that following the two infractions in December, he did not receive any other weapons violations. Additionally, appellant advanced an argument that the statute was vague:

> [APPELLANT'S COUNSEL]: Your Honor, there isn't any sort of indication that during the five years, give or take, that [appellant] has spent in custody in relation to this case that he's ever once attacked any person in any institution with an weapon. It's not –
>
> THE COURT: Is that –

3

APPELLANT: – before this Court.

THE COURT: Is that what is required for an increased penalty?

APPELLANT: Well, Your Honor, my – my personal opinion is that the information that's required under the Maryland statute is pretty vague and unclear as to what it is that, you know, the Court can decide. I mean, the Court can decide any – the Court could decide that if my – you know, if he were to take a tone with someone, if he were to just not show himself to be amenable, if he engages in bad behavior, you know, the Court can consider that.

THE COURT: Well I think –

APPELLANT: It's pretty vague.

THE COURT: Well, I don't know how vague it is, but I think, certainly, any disciplinary record is sufficient for the Court to consider. And that's pretty much what the appellate court said in Davis when they said, well, this evidence was here and would have been sufficient, but it never became part of the record and the judge never said that's what he was relying on.

So the intimation is, if it had been introduced into evidence, and if the judge said, well, this is what I'm relying on then it would have been authorized because that – just like these records that have been introduced into evidence here, that was the type of evidence that the Court foresaw a judge considering and looking at in determining whether, in fact, an increased sentence could be warranted.

The court disagreed and found that it would consider the disciplinary infractions:

THE COURT: All right. Well, let me do this because, it's – even though you indicated it's vague, I think it's pretty clear in Criminal and Judicial Proceedings, Section 12-702(b), in order to consider an increased sentence, the reasons for the increased sentence – increased penalty affirmatively appear.

And I am stating on the record that I find that the three incidents – two in the D.O.C. and the one in the Worcester County Jail – where [appellant] was found in possession of a weapon are the type of behavior and conduct that would warrant an increased sentence.

4

The other consideration is based on additional objective information concerning identifiable conduct. Again, it's pretty much the same, that this is objectionable – objective conduct. It's not subjective. It's not – I'm not considering the attitude that the one witness talked about or anything of that nature.[2] I am strictly considering these three incidents where he was in possession of a weapon.

And number three is the factual data upon which the increased sentence is based appears as part of the record. And there is an abundance of factual evidence that's in evidence based on the C.D.s of the hearing, based on the written findings of the hearing examiner, based on the written reports of the correctional officers and the officers at the Worcester County Jail and the testimony of the witnesses. So there's an abundance of evidence that's in the record that I will consider in fashioning this sentence.

Announcing its ruling, the court stated:

THE COURT: As I was indicating, rehabilitation is another factor to be considered by the Court, and I was alluding to the fact that [appellant] has numerous criminal convictions, continued criminal activity, being placed on supervised probation four times, three of which were violated, and, in addition, this crime for which he stands convicted of today occurred one day after he was released from jail.

In addition to that, after sentencing upon the first conviction, while he was incarcerated, he was charged with institutional violations on three separate occasions, the two in D.O.C and the one in the Worcester County Jail, and was found guilty of each. Chillingly, each of these events involved a knife, the same weapon that was used in this particular case.

* * *

So to prevent [appellant being released and committing another crime], what I'm going to do, as to Count No. 1, I'm going to sentence you to the Division of Correction for the remainder of your natural life without the possibility of parole. As to Count No. 3, armed robbery, I'm going to sentence you to 20 years in the Division of Correction, and that 20 years is consecutive to the life sentence. As to Count No. 4, the theft of less than $500, that will merge with the Count No. 3, armed robbery.

---

[2] One of the State's witnesses was one of appellant's case managers from North Branch who reviewed his progress while in disciplinary segregation. During examination, she noted that appellant was respectful but tended to be cocky and arrogant.

5

Appellant noted a timely appeal. Additional facts shall be provided, *infra*, to the extent they prove relevant in addressing the issue presented.

## STANDARD OF REVIEW

It is well-established that there are only three grounds for appellate review of sentences recognized in this state, which the Court of Appeals outlined in *Gary v. State*, 341 Md. 513 (1996). They are: "(1) whether the sentence constitutes cruel and unusual punishment or violates other constitutional requirements; (2) whether the sentencing judge was motivated by ill-will, prejudice or other impermissible considerations; and (3) whether the sentence was within statutory limits." *Id.* at 516.

In *Ridenour v. State*, 142 Md. App. 1, 11-12 (2001), we discussed the trial judge's broad powers over sentencing and the appellate courts' scope of review, stating:

> Trial judges are vested with broad discretion in sentencing. In exercising this discretion, the sentencing judge should consider "the facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, health, habits, mental and moral propensities, and social background." The judge's consideration should be undertaken with the aim of furthering the goals of the criminal justice system: punishment, deterrence, and rehabilitation.
>
> A sentence is subject to appellate review on three bases: (1) whether it is in violation of federal or state constitutional guarantees; (2) whether the sentencing judge was motivated by ill-will, prejudice, or other impermissible considerations; and (3) whether the sentence is within statutory limits.

*Id*. at 11-12 (internal citations omitted).

## DISCUSSION

### I. Due Process

The Fourteenth Amendment to the U.S. Constitution protects a defendant's due process rights. It states in relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Article 24 of the Maryland Declaration of Rights states:

> That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

Appellant alleges that Cts. & Jud. Proc. §12-702(b) violates his due process rights under both the U.S. Constitution and the Maryland Declaration of Rights. He advances two arguments in support of his contention. First, appellant avers that the State must prove beyond a reasonable doubt any offenses which can be used to increase his sentence. Second, he challenges the statute as void for vagueness, contending that the statute is unclear as to what "identifiable conduct" may render a defendant subject to an increased sentence.

### a. Burden of Proof

Before the trial court and this Court, appellant argues that any conduct subsequent to his first conviction that was used to increase his sentence must have been established before a jury beyond a reasonable doubt. The State responds that there is a distinction between factual determinations that increase a sentence by law, and facts that influence a court's exercise of discretion – the former requires proof beyond a reasonable doubt, while the latter does not. The State avers that the circumstances of the instant case

7

involve an exercise of the court's discretion. Accordingly, any conduct did not need to be established beyond a reasonable doubt by a jury.

The U.S. Supreme Court has consistently affirmed the importance of a jury determination of a defendant's guilt or innocence. Addressing the origins of the right to a jury trial, the Court opined:

> The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power – a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. . . .

*Duncan v. Louisiana*, 391 U.S. 145, 155-56 (1968). More recently, in *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000), the Court has explained:

> [T]o guard against a spirit of oppression and tyranny on the part of rulers, and as the great bulwark of [our] civil and political liberties, trial by jury has been understood to require that *the truth of every accusation,* whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours. . . .

(internal citations and quotations omitted) (emphasis in the original).

8

Relying on *Apprendi*, appellant maintains that the right to a jury trial extends to any factual findings which increase a defendant's sentence. There, Apprendi was charged with second degree possession of a firearm for an unlawful purpose, and twenty two other related charges, after shooting several times into the home of an African American family. 530 U.S. at 469. The second degree firearm possession carried a maximum sentence of ten years imprisonment. *Id.* He originally indicated to police that his motivation for the shooting was that he did not want the African American couple living in his neighborhood. He later retracted this statement and was not charged under the state's hate crime statute. *Id.* Apprendi pled guilty to three firearms charges. *Id.* The State moved for an enhanced sentence as to the second degree firearm possession count, alleging that the shooting was racially motivated and therefore, a hate crime. *Id.* at 470. The potential sentence with the hate crime enhancement for the second degree firearm possession count alone increased from a maximum of ten years to a maximum of twenty years. *Id.* After hearing the evidence on the enhancement, the court found by a preponderance of the evidence that the crime was racially motivated and sentenced Apprendi to twelve years for the second degree firearm possession count and two concurrent sentences for the other two counts. *Id.* at 471. Apprendi appealed, arguing that due process required that a jury find that the hate crime enhancement was established beyond a reasonable doubt. *Id.*

The Supreme Court explored the history and importance of the jury trial and proof beyond a reasonable doubt. *See generally id.* at 476-85. It explained that while in the past there was very little distinction between an element of a felony and a sentencing

9

factor, today, courts have accepted that the two are different and some determinations "[go] not to a defendant's guilt or innocence, but simply to the length of his sentence." *Id.* at 484. Citing *McMillan v. Pennsylvania*, 477 U.S. 79 (1989), the Court explained that a sentencing factor is "a fact that was not found by a jury but that could affect the sentence imposed by the judge." *Id.* at 485. In determining whether a fact is an element or a sentencing factor: "the relevant inquiry is one not of form, but of effect – does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict." *Id*. at 494. The Court elaborated that "[t]his is not to suggest that the term 'sentencing factor' is devoid of meaning. The term appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within* the range authorized by the jury's finding that the defendant is guilty of a particular offense." *Id*. at 494 n. 19. The Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

Since this ruling, Maryland Courts have repeatedly addressed *Apprendi*'s impact on enhanced sentences. *See Oken v. State*, 378 Md. 179 (2003); *Borchardt v. State*, 367 Md. 91 (2001); *Parker v. State*, 185 Md. App. 399 (2009); *Jones v. State*, 138 Md. App. 12 (2001). In the instant case, we are tasked with determining whether Cts. & Jud. Proc. §12-702(b) permits an increase in the statutory maximum of appellant's sentence. If it does, the conduct must be established beyond a reasonable doubt. We addressed a similar inquiry in *Parker*. There, the defendant was convicted of witness retaliation, which had a

10

maximum sentence of five years.  185 Md. App. at 410.  However, the statute permitted

the court to enhance the sentence to a maximum of twenty years if the retaliation was

committed in relation to a felony.  *Id.*  The court found that the circumstances for the

enhancement were present and sentenced him to twenty years.  *Id.* at 411.  The defendant

appealed, arguing in part that his due process rights under *Apprendi* were violated by

increasing the sentence without a jury finding beyond a reasonable doubt.  *Id*. at 409.

We began by reviewing *Apprendi* and exploring the differences discussed *supra*,

between a sentencing factor and an element of the crime.  *Id.* at 415-17.  Citing *Blakely v.*

*Washington*, 542 U.S. 296 (2004), and quoting *U.S. v. Booker*, 543 U.S. 220, 232 (2005),

we explained that: "the 'statutory maximum' for *Apprendi* purposes is the maximum

sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict*

*or admitted by the defendant*."  *Id.* at 417 (emphasis in the original).  We further clarified,

quoting a Court of Appeals case, *Wadlow v. State*, 335 Md. 122 (1994):

> In Maryland, . . . we have generally drawn a distinction between sentence enhancement provisions that depend upon prior conduct of the offender and those that depend upon the circumstances of the offense.  In the former situation, involving recidivism, we have made it clear that determination of the requisite predicate facts is for the sentencing judge. . . .
>
> In the latter case, however, where the legislature has prescribed different sentences for the same offense, depending upon a particular circumstance of the offense, we have held that the presence of that circumstance must be alleged in the charging document, and must be determined by the trier of fact applying the reasonable doubt standard.

*Parker*, 185 Md. App. at 419.  Since the defendant's increased sentence resulted from the

circumstances of the crime itself, we concluded that due process necessitated that the

facts establishing the enhancement be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 421.

Returning to the case at bar, at his first trial, appellant was convicted of first degree premeditated murder and armed robbery. He was sentenced to life with the possibility of parole and a consecutive twenty year sentence for the armed robbery conviction. The maximum sentence for first degree murder is life without the possibility of parole and the maximum sentence for armed robbery is twenty years. *See* Crim. Law. §§2-201(b)(1) & 3-403(b). At his second trial, he was convicted of first degree premeditated murder, armed robbery, and misdemeanor theft. He was sentenced to life without the possibility of parole and a consecutive twenty year sentence for armed robbery.[3] As we explained in *Parker*, the statutory maximum is the maximum sentence that can be imposed based on the facts reflected in the guilty verdict. 185 Md. App. at 417. Courts and Judicial Proceedings §12-702(b) permits a court to impose a more severe sentence than the sentence imposed at the first trial if there was some conduct on the part of the defendant that occurred after the first conviction. This conduct does not have any relation to the crime that the defendant was tried for, and accordingly, has no relation to his guilt or innocence. Therefore, in answering the question posited in *Apprendi*, whether the factual findings expose the defendant to a sentence greater than the statutory maximum, we respond in the negative. Here, the consequence of being found guilty of first degree murder is that the court may impose a sentence up to life without the possibility of parole. Courts and Judicial Proceedings §12-702(b) did not expose appellant to a sentence greater

---

[3] The theft count merged with the armed robbery count for purposes of sentencing.

than that and accordingly, it did not expose him to a sentence greater than the statutory maximum. The facts the sentencing court considered, those relating to appellant's disciplinary record while he was incarcerated, are unrelated to the guilty verdict. They have no role in establishing or disproving whether appellant committed premeditated murder. We hold that *Apprendi* is not applicable to the case at bar and that appellant's due process rights were not violated. Accordingly, we will not reach appellant's second due process argument asserting vagueness. *See Galloway v. State*, 365 Md. 599, 610 (2001) ("'. . . [t]he basic rule is that there is a presumption' that the statute is valid. We are reluctant to find a statute unconstitutional if, 'by any construction, it can be sustained.'") (internal citation omitted).

## II. Unconstitutional in application

Appellant also maintains that even if we find the statute is not *per se* unconstitutional, it was unconstitutionally applied to the circumstances of his case.

To determine whether the court properly applied Cts. & Jud. Proc. §12-702(b) to appellant's case, we must construe the statute. The Court of Appeals outlined the principles of statutory construction in *Condon v. State of Maryland-Univ. of Maryland*, 332 Md. 481, 491 (1993).

> The cardinal rule of statutory construction is to ascertain and carry out the true intention of the legislature. *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730 (1986). In searching for legislative intention, a court looks for the general purpose, aim, or policy behind the statute. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987). We first look to the plain meaning of the language of the statute to discern legislative intent. *Tucker*, *supra*, 308 Md. at 73, 517 A.2d 730. Where the language is clear and unambiguous, a court may not add or delete words to make a statute reflect an intent not evidenced in that language, *State v. In Re*

13

*Patrick A.*, 312 Md. 482, 487, 540 A.2d 810 (1988), to avoid a harsh result, *Simpson v. Moore*, 323 Md. 215, 225, 592 A.2d 1090 (1991); *Cotham and Maldonado v. Board*, 260 Md. 556, 565, 273 A.2d 115 (1971). A clearly worded statute must be construed without "forced or subtle interpretations" that limit or extend its application. *Tucker*, *supra*, 308 Md. at 73, 517 A.2d 730; *Wheeler v. State*, 281 Md. 593, 596, 380 A.2d 1052 (1977), cert. *denied*, 435 U.S. 997, 98 S.Ct. 1650, 56 L.Ed.2d 86. The language must be examined in the context in which it was adopted. *Motor Vehicle Admin. v. Mohler*, 318 Md. 219, 225, 567 A.2d 929 (1990).

With these considerations in mind, we now turn to Cts. & Jud. Proc. §12-702(b) to ascertain whether the sentencing court's application passes constitutional muster.

The statute was crafted in response to the U.S. Supreme Court's opinion in *North Carolina v. Pearce*, 395 U.S. 711 (1969). The defendants in that case were convicted of crimes and received new trials after successfully appealing their convictions. *Id.* at 713-14. After their second trial, they received more harsh sentences than they had received at their first trial. *Id.* The Supreme Court held that there was no absolute bar to imposing a harsher sentence upon retrial under either the Equal Protection Clause or Due Process Clause. The Court held that a trial court may impose a new sentence that is more severe than the sentence at the first trial based on events that occurred after the first conviction. Notably, the Court explained that it may be permissible for a court to increase a sentence:

> in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337. Such information may come to the judge's attention from evidence adduced at the second trial itself, **from a new presentence investigation, from the defendant's prison record, or possibly from other sources.** The freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle, fully approved in [*Williams v. New York*, *supra*,] that a State may adopt the 'prevalent modern philosophy of penology that the punishment should fit

14

the offender and not merely the crime.' *Id.*, 337 U.S. at 247, 69 S.Ct., at 1083.

*Id.* at 723 (emphasis added). The Court then enumerated the requirements that must be present before a Court increases a sentence.

> [W]e have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 726.

In response to this ruling, Maryland, along with many other states, enacted a statute codifying the court's ruling. The revisor's note to Cts. & Jud. Proc. §12-702(b) explains that ". . . the circumstances permitting an increased sentence are taken almost verbatim from [*Pearce*]." The intent of the General Assembly in enacting §12-702 was to effectuate the Supreme Court's concerns from *Pearce*. Since the language of the statute we are interpreting is derived directly from *Pearce*, we give consideration to the text of the *Pearce* decision in ascertaining its intent. *See Briggs v. State*, 289 Md. 23, 33 (1980) (analyzing Cts. & Jud. Proc. §§12-702(b)&(c) and explaining that an examination of *Pearce* is useful to resolving the issues since the statute was created in response to *Pearce*). The *Pearce* Court explained that facts appropriate to consider in increasing a sentence after a re-trial are those related to "the defendant's life, health, habits, conduct, and mental and moral propensities" or facts included in a new presentencing report or the defendant's records while incarcerated since the first trial. 395 U.S. at 723.

15

In *Davis v. State*, 312 Md. 172 (1988), the Court of Appeals accepted that a disciplinary record while incarcerated may be used to increase a sentence pursuant to Cts. & Jud. Proc. §12-702(b). There, the defendant was convicted of rape and sentenced to life imprisonment. *Id.* at 174. He filed a petition for post-conviction relief and was granted a new trial. *Id.* At the second trial, he was convicted of the same offenses. Before sentencing, the State sought to increase his sentence by asserting that the defendant had several disciplinary infractions while incarcerated, including assaulting and threatening correctional officers, and possessing shanks and alcohol. *Id.* at 181. The defendant denied all of these accusations and asserted that the internal administrative procedures had found in his favor. *Id*. at 182. Notwithstanding his objections, the court increased the defendant's sentence, sentencing him to life imprisonment plus forty years. *Id.* at 175. The defendant appealed, this Court affirmed his conviction and the Court of Appeals granted *certiorari*. *Id.*

The Court of Appeals noted that although the proffered conduct, the defendant's numerous disciplinary infractions, was legally sufficient objective and identifiable conduct, the three prongs required by §12-702(b) were not met. *Id.* at 181. The Court held that although the trial court apparently found that the infractions and other conduct were sufficient, it did not state its findings on the record or explain its reasoning. *Id.* at 182-83. Additionally, the State had offered some evidence that the statute does not permit to be used to increase a sentence, and the failure of the court to state its rationale prevented the Court of Appeals from determining whether the sentencing court's finding was predicated upon the impermissible conduct. *Id.* at 183. Finally, as to Cts. & Jud.

16

Proc. §12-702(b)(2), the Court held that while the State relied upon the defendant's case record[4] from the Department of Corrections, this document was not entered into evidence and was therefore not a part of the record. *Id.* at 182. Consequently, there was no factual basis upon which to base the findings of the sentencing court. The Court of Appeals vacated the sentence, concluding that even though the defendant's conduct while incarcerated was identifiable conduct sufficient under *Pearce* and Cts. & Jud. Proc. §12-702(b) to warrant an increased sentence, the statutory requirements were not met. *Id.* at 183.

Since *Pearce* specifically referenced incarceration records, it is evident that it was permissible to use appellant's disciplinary infractions from North Branch and the Worcester Jail to increase his sentence. In *Pearce*, the Supreme Court acknowledged that any conduct, subsequent to the first conviction, which would permit the court to impose a sentence that fit the offender along with the crime, may be considered. The Court even specifically noted that a defendant's prison record, may be one such consideration.

---

[4] (d) *Inmate conduct.* – In accordance with regulations adopted by the Division, the managing official of each correctional facility shall maintain, as a part of an inmate's case record:

> (1) an adequate record of the conduct, effort, and progress of the inmate during confinement; and

> (2) a record of the character of any offense committed by the inmate and the nature and amount of punishment inflicted.

Maryland Code (1999, Repl. Vol. 2008) § 3-601 of the Correctional Services Article.

17

Taking into consideration the fact that the General Assembly intended the statute to conform to the intent and requirements of *Pearce*, and that *Pearce* clearly enumerates that a correctional disciplinary record and a defendant's conduct while incarcerated are types of conduct that may be considered, we hold that the statute was not applied unconstitutionally.

## III. Improper Argument

Lastly, appellant asserts that one of the reasons relied upon by the State in seeking an increase in sentence was incorrect, therefore entitling appellant to a new sentencing. During arguments on the motion seeking an enhanced sentence, the State remarked that appellant had been convicted of felony murder in the first trial and convicted of premeditated murder in the second trial. As the record demonstrates, and the State concedes in its brief, this assertion was incorrect. Appellant was found guilty of first degree premeditated murder in both trials.

However, we observe that the sentencing court did not rely upon this argument in determining whether to permit the State to seek an enhanced sentence.

> THE COURT: . . . And – according to the factors, it has to be based on objective evidence that would justify an increase in sentence.
>
> What's been proffered here, the disciplinary records of [appellant] in the D.O.C. and in the Worcester County Detention Center, would be the type of objective evidence that, if the Court found was persuasive, would warrant an increase in sentence.
>
> So based on all of that, I'm going to rule that, in fact, the State is able to proceed with a request for an increased sentence.

Accordingly, we shall affirm the circuit court.

18

**JUDGMENTS OF THE CIRCUIT COURT FOR WORCESTER COUNTY ARE AFFIRMED. COSTS TO BE PAID BY APPELLANT.**