506 A.2d 1171

AMERICAN RECOVERY COMPANY, INC.

v.

DEPARTMENT OF HEALTH AND MENTAL HYGIENE.

No. 116, Sept. Term, 1984.

Court of Appeals of Maryland.

April 4, 1986.

Warren K. Rich (Stephen P. Kling, William Roger Truitt and Niles, Barton & Wilmer, on brief), Annapolis, for appellant.

James J. Lyko, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Michael C. Powell, Asst. Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired) and THEODORE G. BLOOM, Associate Judge of the Court of Special Appeals, Specially Assigned.

COLE, Judge.

The primary question we shall decide in this case is whether former § 8–1416(d) of the Natural Resources Article [1] requires a showing of actual harm to the environment before a civil penalty may be assessed for a violation of Maryland's hazardous waste laws.

Appellant, American Recovery Company, Inc. (ARC), is a Maryland corporation licensed by appellee, the Department of Health and Mental Hygiene (DHMH), to store and treat certain hazardous wastes at a designated facility in the Curtis Bay area of Baltimore City. On May 5, 1982, the Secretary of Health and Mental Hygiene, acting through the Assistant Secretary for Environmental Programs, issued four civil penalty assessments against ARC, alleging violations of various provisions of Maryland's hazardous waste laws and regulations. The four civil penalty assessments are summarized as follows:

Assessment C–0–82–190 charged ARC with violations relating to the location and condition of certain hazardous waste drums and tanks.

Assessment C–0–82–191 charged that ARC has failed to report and repair a leak in an acid storage tank over a three-month period.

Assessment C–0–82–192 charged that ARC had improperly completed hazardous waste manifests and had failed to implement a flood management plan.

Assessment C–0–82–193 charged ARC with storing compressed gas cylinders in violation of its facility permit.

Each assessment established a date for an administrative hearing, and contained the following language:

In lieu of appearing [at the hearing], American Recovery Company, Inc. may prepay a civil penalty to the Depart-

---

1. Section 8–1416(d) has been recodified and is now located at § 7–266(b) of the Health-Environmental Article of the Annotated Code of Maryland. The Department of Health and Mental Hygiene is responsible for the enforcement of the hazardous waste provisions of this Article.

ment of Health and Mental Hygiene in the amount of $10,000. By doing so, American Recovery Company, Inc. waives its right to a hearing and its opportunity to contest the assessment of the penalty.

ARC rejected the terms of the above provision and elected to appear at the hearing. A four day hearing was conducted before a DHMH hearing examiner. The hearing examiner issued Findings of Fact and Conclusions of Law, recommending the following penalties:

| | |
|---|---|
| C–0–82–190, | $4,500 |
| C–0–82–191, | $1,000 |
| C–0–82–192, | $1,500 |
| C–0–82–193, | $2,000 |

ARC filed exceptions to the hearing examiner's recommended decision. The Assistant Attorney General representing DHMH filed a response urging an increase in the monetary penalty recommended by the hearing examiner. Pursuant to the requirements of the Administrative Procedure Act, a second hearing was held before the Assistant Secretary for Environmental Programs. The Assistant Secretary's final administrative decision increased two of the recommended penalty amounts by $1,000 each, for a total penalty assessment of $11,000. Other than the increased assessment, the final decision essentially adopted the findings and conclusions of the hearing examiner.

In June of 1983, ARC appealed DHMH's final decision to the Circuit Court for Baltimore City. The circuit court affirmed the agency's decision, except that the court modified the penalty assessment by reducing the total assessment to $10,000. ARC appealed the circuit court's decision to the Court of Special Appeals. Prior to argument of the case in that court, we granted certiorari on our own motion.

ARC advances several grounds for reversal: (1) that former § 8–1416(d) prohibits the imposition of a civil penalty by DHMH for the violation of Maryland's hazardous waste laws, absent a showing of actual harm to the environment; (2) that the civil penalty assessments are invalid in that they completely prejudge the guilt of ARC, ignoring

§ 8–1416(d)'s requirement that such a determination be made only after a hearing and after consideration of certain enumerated criteria; (3) that the administrative decision is defective because the hearing officer failed to evaluate the evidence in light of the criteria enumerated in former § 8–1416(d); (4) that DHMH improperly sought to increase the civil penalty assessment that had been recommended by the hearing examiner; and (5) that the commingling of the investigative, prosecutorial, and judicial functions by DHMH denied ARC due process of law.

I

ARC contends that former § 8–1416(d) requires a showing of actual pollution before a civil penalty may be imposed by DHMH for a violation of the State's hazardous waste laws. This section provides:

> In addition to any other remedies available at law or in equity, a civil penalty may be assessed for violation of any provisions of this subtitle, or rules, regulations, orders, or permits issued pursuant thereto.... The civil penalty assessed shall be $500 for each day of violation, not exceeding a total sum of $10,000; consideration shall be given to the willfulness of the violation; to the damage or injury to the waters of the State or the impairment of its uses; to the cost of clean-up; to the nature and degree of injury to or interference with general welfare, health and property; to the suitability of the waste source to the geographic location, including priority of location; to the available technology and economic reasonableness of controlling, reducing or eliminating the waste; and other relevant factors.

Maryland Code (1974, 1981 Cum.Supp.), § 8–1416(d) of the Natural Resources Article. In 1983, the legislature revised the statutory considerations to be applied in assessing civil

penalties.[2] One of the considerations in the revised statute is "the extent to which the location of the violation, including location near waters of this State or areas of human population, creates the potential for harm to the environment or to health or human safety." Because this statutory amendment inserted the words "potential for harm" into this consideration, ARC argues that the pre-amended civil penalty statute cannot be construed to permit DHMH to consider potential harm in assessing a civil penalty for a hazardous waste law violation. We disagree.

Initially, we note our disagreement with ARC's assertion that the 1983 amendment is "of controlling significance" as to the meaning of the earlier version of the statute. Our cases make clear that a subsequent amendment or legislative construction of a statute is not controlling as to the meaning of the prior law. *Collier v. Connolley*, 285 Md. 123, 125–26, 400 A.2d 1107, 1108 (1979); *Director v. Myers*, 232 Md. 213, 218, 192 A.2d 278, 280 (1963); *A.G. Crunkleton v. Barkdoll*, 227 Md. 364, 369, 177 A.2d 252, 255 (1962). Thus the 1983 amendment is not determinative of the meaning of former § 8–1416(d). More important, however, we believe that ARC's argument demonstrates a fundamental misunderstanding of the basis of a civil penalty assessment under former § 8–1416(d). The assessment is based upon the violation itself, not upon the harm caused by the violation.

The first sentence of former § 8–1416(d) authorizes DHMH to assess a civil penalty for violation of any of the State's hazardous waste laws. Contrary to ARC's contention, the agency's authority to assess a penalty under this section is not conditioned upon a finding that the violation caused actual harm to the environment. We do not believe that the legislature intended to require DHMH to sit on its

---

**2.** This amendment, enacted as 1983 Md. Laws 99, is now codified in Maryland Code (1982, 1985 Cum.Supp.), § 7–266(b)(2)(ii)(5) of the Health-Environmental Article.

hands until the violation manifested actual harm to the environment. Indeed, one of the stated goals of Maryland's hazardous waste laws is "to provide additional and cumulative remedies to *prevent*, abate, and control the pollution of the waters of the State." Section 8–1403 of the Natural Resources Article (emphasis supplied). For a civil penalty assessment to be effective in preventing pollution, the agency cannot wait until the pollution occurs to assess the penalty.

The considerations set forth in former § 8–1416(d) serve two purposes: they provide guidance to the administrative agency in exercising its discretion as to the assessment of civil penalties, and they also provide for meaningful judicial review of DHMH's assessment of such penalties. *See County Council v. Investors Funding*, 270 Md. 403, 441–2, 312 A.2d 225, 246 (1973). We do not believe, however, that these considerations are conditions precedent to the assessment of a civil penalty by DHMH. Therefore, ARC's argument, which is based upon a subsequent amendment of the statutory considerations, is unavailing.

## II

ARC next argues that DHMH, through the civil penalty assessments, prejudged the existence of the violations and assessed the civil penalties without a hearing. In support of this argument, ARC points to the "unequivocal factual language" used by DHMH in the documents to set forth the alleged violations. We think, however, that the language in the documents simply advances the underlying facts, gathered by the agency in its investigation, that support the violations with which ARC is charged. For example, one of the documents states "WHEREAS, on February 19, 1982, March 24, 1982, and April 2, 1982, site inspections by representatives of the Office of Environmental Programs (OEP) found deformed, rusting, deteriorated, and leaking containers in storage, said conditions constitut-

ing violations of COMAR 10.51.05 Regulations .03B and .09B...." This type of factual recitation did not diminish the obligation of DHMH to prove the existence of these facts at the administrative hearing. Indeed, the parties generated over 700 pages of transcript at the hearing in disputing the alleged violations. We agree with the trial court's conclusion that these documents basically constituted "charging document[s]." The language contained therein, although factual in tone, did not serve to adjudicate the subject matter of the documents. The mere fact that the charging document, entitled "Civil Penalty Assessment," may not be artfully captioned, as the trial court pointed out, is not enough to sustain ARC's contention that the agency prejudged the case.

■ As further support of its prejudgment argument, ARC points to the fact that the same agency official signed the "Civil Penalty Assessments" and issued the final administrative decisions. The U.S. Supreme Court, however, expressly rejected this argument in *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). In *Withrow*, the Court noted that judges often issue arrest warrants or conduct preliminary hearings, and then preside later at the trial of the same matter without a jury. Likewise, the Court declared, "It is very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure ... does not violate due process of law." *Id.* at 56, 95 S.Ct. at 1469, 43 L.Ed.2d at 729. Indeed, we cited *Withrow* for this same proposition in *Consumer Protection v. Consumer Pub.*, 304 Md. 731, 762, 501 A.2d 48, 64 (1985). The facts of the instant case fit neatly within the holding of *Withrow:* low-echelon DHMH staff investigated and drafted the

charges, which were then approved by the Assistant Secretary. Thus, the Assistant Secretary's role in the filing of the initial charges and the final administrative adjudication is insufficient to show prejudgment on the agency's part.[3]

### III

■ ARC contends that the administrative decision rendered by DHMH is defective because the hearing examiner failed to evaluate the evidence in light of the statutory considerations set forth in former § 8–1416(d). After a careful inspection of the hearing examiner's recommended decision, we find that ARC's contention is not supported by the facts of the case. The findings of the hearing examiner clearly indicate that the examiner took the statutory criteria into consideration. For example, the first consideration set forth in former § 8–1416(d) is "the willfulness of the violation." The hearing examiner expressly found that "[t]he company has been on notice about specific violations and has not remedied them." As to specific violations, the examiner found "the company had previously been placed on notice by the Waste Management Administration not to retain reactive hazardous waste and shock-sensitive waste on the third floor. . . . Even if it was being processed, [ARC] was on notice not to process these materials on the third floor." Regarding the acid tank leak discovered by the company itself, the examiner found "the company did continue to use the tank and drain down its contents. There was always potential for this hole to enlarge and rust out and corrode further. The only schedule [ARC] had was to empty the contents by normal usage. This is no schedule at all." ARC cites *United Steelworkers v. Beth. Steel,* 298 Md. 665, 472 A.2d 62 (1984) in support of its argument that

---

**3.** We do not address ARC's argument concerning the validity of the prepayment option contained in the civil penalty assessments. Because ARC chose not to exercise this option, its inclusion caused no prejudice to ARC.

the hearing examiner's recommended decision is inadequate. In *United Steelworkers,* we vacated an order of the Commissioner of Labor and Industry, which had imposed a $1,000 penalty on Bethlehem Steel, because the Commissioner did not make specific findings that were necessary for meaningful judicial review. *Id.* [298 Md.] at 679–80, 472 A.2d at 69–70. Judge Rodowsky noted for the Court, "For the Commissioner to state that '[t]here was ample evidence offered by [the administrative agency] concerning achievable measures that were readily available to [Bethlehem]' tells us nothing in relation to this record and precludes judicial review. 'We must know what a decision means before the duty becomes ours to say whether it is right or wrong.'" *Id.* [298 Md.] at 679, 472 A.2d at 69 (quoting *United States v. Chicago, M., St. P. & P.R. Co.,* 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed.2d 1023, 1032 (1935). The hearing examiner's recommended decision in the instant case, however, clearly contains the specific findings of fact that were lacking in *United Steelworkers.* These findings of fact indicate that the hearing examiner took the statutory criteria into consideration as required by former § 8–1416(d). As a whole, the decision provides a sufficient basis for meaningful judicial review.

## IV

■ Based upon our decision in *Maryland Board of Pharmacy v. Peco, Inc.,* 234 Md. 200, 198 A.2d 273 (1964), ARC argues that DHMH improperly sought to increase the civil penalty assessment recommended by the hearing examiner. We think, however, that ARC's reliance on *Peco* is misplaced. In *Peco,* we held that the administrative agency there involved was not an "aggrieved party" for purposes of taking an appeal. *Id.* [234 Md.] at 202–03, 198 A.2d at 274. In the instant case, the hearing examiner initially recommended total civil penalties of $9,000. Pursuant to Maryland Code (1957, 1982 Repl.Vol.), Art. 41, § 253, ARC

then filed exceptions with the agency official who was to make the final decision. At this point, counsel for DHMH filed a response, urging an increase of the total penalties recommended by the hearing examiner. Unlike *Peco*, no final agency decision had been rendered. *See Employment Sec. Adm. v. Smith*, 282 Md. 267, 269–70, 383 A.2d 1108 (1978). ARC is generally correct in stating that "the rationale of *Peco* is that a quasi-judicial entity has no stake in upholding its decision." However, the holding in *Peco* is not applicable where the agency has yet to make a final decision.

■ In support of its argument, ARC also points to the express language of Art. 41, § 253, which provides:

Whenever in a contested case, a majority of the officials of the agency who are to render the final decision have not heard the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision, including findings of fact and conclusions of law, has been served upon the parties, and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to a majority of the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties.

The statute clearly requires an agency to afford "a party adversely affected" the right to file exceptions, where "a majority of officials of the agency who are to render the final decision have not heard the evidence." *Id. See Bethesda Management Serv. v. Dep't of Lic. and Reg.*, 276 Md. 619, 627–28, 350 A.2d 390, 394–5 (1976). In affording this right, however, the statute does not prohibit the agency from filing a *response* to the non-agency party's exceptions. Therefore, we conclude that the agency did not act improperly in responding to the exceptions filed by ARC.

V

■ Lastly, ARC asserts that the administrative proceedings denied to ARC an impartial decision-maker. ARC bases this argument upon certain testimony given by the Assistant Secretary for Environmental Programs at a hearing before a U.S. Congressional subcommittee. The relevant testimony is as follows:

With respect to American Recovery I would make several observations. First of all, when you and I were there in the fall of last year, I think we were both concerned with what we saw. There were three major areas that corrective action was to be taken. Those involved concrete pads, the flood control situation, and removal of wastes from the third floor of that facility. We have, and for reasons that have been discussed already in terms of the property ownership and alterations arising out of that issue, been delayed in the flood work. Corrective action has been ordered as part of the order, and the failure to take that action is one of the counts for which we are seeking a civil penalty.

With respect to the concrete pad issue, that was delayed primarily because of the possible move of the facility. At this point that has also been ordered to be installed since I am not taking any bets anymore on the removal of that facility one way or the other. One of our concerns with respect to the civil penalties, and it has been a problem with the handling of material, even including what we thought we had accomplished 6 or 8 months ago, so we have initiated this action.

*Implementation of Federal Hazardous Waste Legislation in Maryland: Hearing Before the Subcomm. on Commerce, Transportation, and Tourism of the House Comm. on Energy and Commerce*, 95th Cong., 2nd Sess. 98 (1982) (statement of William Eichbaum, Ass't Secretary, DHMH). We disagree with ARC's contention that this testimony provides sufficient basis for a finding that the Assistant Secretary "has in some measure adjudged the facts as well as the law in advance of hearing it." *Cinderella Career*

*and Finishing Schools v. FTC,* 425 F.2d 583 (D.C.Cir.1970). The testimony clearly indicates that the Assistant Secretary *possessed knowledge* of the facts underlying the initial assessments. Indeed, the Assistant Secretary had signed the civil penalty documents just ten days earlier. We believe that the testimony does nothing more than recite the facts that support the institution of the civil penalty proceedings. *See Consumer Protection, supra,* 304 Md. at 765, 501 A.2d at 66. As the U.S. Court of Appeals noted in *Cinderella:*

> There is a marked difference between the issuance of a press release which states that the Commission has filed a complaint because it has "reason to believe" that there have been violations, and statements by a Commissioner after an appeal has been filed which gives the appearance that he has already prejudged the case and that the ultimate determination of the merits will move in predetermined grooves.

*Id.* at 590. We do not believe that the Assistant Secretary's testimony amounts to a prejudgment of the merits of this case. As we pointed out in an earlier case, *Board of Med. Examiners v. Steward,* 203 Md. 574, 102 A.2d 248 (1952), "an administrative agency is sometimes required to act as both prosecutor and judge, and it has never been held that such procedures denies constitutional right." *Id.* [203 Md.] at 583, 102 A.2d at 252. We find that the mere recitation by an agency official of the underlying facts that are alleged to support the charges in question does not inherently manifest bias on the part of the agency official, so as to preclude such official from rendering a fair decision after all of the evidence has been brought out through the adversarial process. Thus, we conclude that the testimony of the Assistant Secretary is not a sufficient basis for a finding that ARC was denied an impartial decision-maker in the administrative proceeding.

We find no merit in any of appellant's contentions.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. APPELLANT TO PAY THE COSTS.