962 A.2d 374

**INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, Local 1715 Cumberland Firefighters, et al.**

v.

**MAYOR & CITY COUNCIL OF CUMBERLAND, et al.**

No. 88, Sept. Term, 2008.

Court of Appeals of Maryland.

Dec. 22, 2008.

2

Francis J. Collins (Kahn, Smith & Collins, P.A., Baltimore) on brief, for Appellants/Cross–Appellees.

Michael Scott Cohen (Michael Scott Cohen, LLC, Cumberland) on brief, David R. Moore, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., William F. Brockman, Sandra B. Brantley, Asst. Attys. Gen., Baltimore) on brief, for Appellees/Cross–Appellants.

Argued Before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

**4**

BATTAGLIA, Judge.

The issue in this election law case is whether the number of signatures supporting a petition for referendum of a proposed piece of municipal legislation can be supplemented by another set, filed three days later, before the deadline for approval of signatures has expired. The petition also raises the issue, once again, of whether "inactive" voters must be counted in the total number of qualified voters.

## I. Introduction

Employees of the Cumberland Fire Department and representatives of the International Association of Fire Fighters, Local 1715 ("Firefighters") in the Spring of 2008 began to petition for an amendment to the Charter of the City of Cumberland, which would provide for binding arbitration of disputes between non-management employees of the Fire Department and the City of Cumberland. The petition states:

We, the undersigned voters of the City of Cumberland, Maryland, hereby petition to have this amendment of the City Charter submitted to a vote of the registered voters of the City of Cumberland for approval or rejection at the next general election or at a special election called by the City Council.

*Proposal*

*COLLECTIVE BARGAINING AND BINDING ARBITRATION FOR NON–MANAGEMENT EMPLOYEES OF THE FIRE DEPARTMENT. [NEW ARTICLE 37A TO THE CHARTER OF THE CITY OF CUMBERLAND]* NON–MANAGEMENT EMPLOYEES OF THE FIRE DEPARTMENT OF THE CITY OF CUMBERLAND SHALL BE ENTITLED TO DESIGNATE A UNION TO ACT AS THEIR EXCLUSIVE REPRESENTATIVE AND TO ENGAGE IN COLLECTIVE BARGAINING WITH THE CITY REGARDING WAGES, BENEFITS, AND WORKING CONDITIONS. THE CITY COUNCIL SHALL PROVIDE BY ORDINANCE FOR BINDING

ARBITRATION WITH THE EXCLUSIVE REPRESEN-
TATIVE IN ORDER TO RESOLVE LABOR DISPUTES.
THE ORDINANCE SHALL PROVIDE FOR THE AP-
POINTMENT OF A NEUTRAL ARBITRATOR, THE
FACTORS THAT SHOULD BE CONSIDERED BY THE
ARBITRATOR, AND THE PROCEDURES FOR IMPLE-
MENTING THE ARBITRATOR'S DECISION AS PART
OF THE CITY'S BUDGETARY PROCESS. ANY ORDI-
NANCE THAT IS ENACTED SHALL PROHIBIT
STRIKES OR WORK STOPPAGES BY THE REPRE-
SENTED EMPLOYEES.

In order to comply with Section 14 of Article 23A, Maryland Code (1957, 2005 Repl.Vol.),[1] which requires the support of "[t]wenty per centum or more of the persons who are qualified to vote in a municipal general elections" to initiate a proposed

---

1.  Section 14 of Article 23A, Maryland Code (2005 Repl.Vol.), provides:

    (a) *Petition; resolution of legislative body setting time for referendum.*—Twenty per centum or more of the persons who are qualified to vote in municipal general elections in the particular municipal corporation may initiate a proposed amendment or amendments to the municipal charter, by a petition presented to the legislative body of the municipal corporation, by whatever name known. The petition shall contain the complete and exact wording of the proposed amendment or amendments, and the proposed amendment or amendments shall be prepared in conformity with the several requirements contained in subsections (b) and (c) of § 13 of this subtitle. Each person signing it shall indicate thereon both his name and residence address. Upon receiving the petition, the legislative body is directed to verify that any person who signed it is qualified to vote in municipal general elections, and shall consider the petition as of no effect if it is signed by fewer than twenty per centum of the persons who are qualified to vote in municipal general elections. If the petition complies with the requirements of this section, the legislative body shall by resolution, passed as in its normal legislative procedure, and not later than sixty days after the petition shall have been presented to it, specify the day and the hours for the election at which the question shall be submitted to the voters of the municipal corporation. This may be at either the next regular municipal general election or at a special election, in the discretion of the legislative body. In the event a special election is designated, it shall be within a period of not less than forty days nor more than sixty days after the final passage of the resolution. In the resolution, the exact wording shall be specified which is to be placed on the ballots or

amendment, the Firefighters submitted 3,550 signatures to the City on July 25, 2008; 2,172 of the signatures were approved by the City on August 15, 2008. Realizing that the amount of signatures fell short of the 20% benchmark, the Firefighters submitted 472 additional signatures three days later. The City, however, refused to review any of the signatures, contending that the additional 472 signatures constituted a second, separate petition, which, standing alone, also, in itself, contained an inadequate number of signatures.

The Firefighters filed their Verified Complaint for Writ of Mandamus, Declaratory Judgment, and Injunctive Relief on August 22, 2008, naming as defendants the Mayor and City Council of Cumberland ("City"), the Allegany County Board of Elections ("County Board"), the Cumberland Board of Election Supervisors and the Maryland State Board of Elections ("State Board").[2] The complaint alleged that the Allegany Board of Elections provided the Firefighters with a list of voters containing 11,906 names, without "inactive" voters, from which the Firefighters determined that 2,381 signatures were necessary to meet the 20% requirement, but that the City later maintained that there were 12,911 qualified voters

---

voting machines when the question is submitted to the voters of the municipal corporation.

. (b) *Adoption of amendment by resolution.*—Provided, however, that if the legislative body shall approve of the amendment or amendments provided for in the petition presented to it under subsection (a) above, it shall have the right by resolution to adopt the amendment or amendments thereby proposed and to proceed thereafter in the same manner as if the amendment or amendments had been initiated by such legislative body and in compliance with the provisions of § 13 of this article.

Statutory references to Article 23A throughout are to the Maryland Code (1957, 2005 Repl.Vol.), unless otherwise noted.

**2.** The complaint alleges that the County Board "run[s] the elections that take place under the City Charter" and that the State Board of Elections oversees the County Board and "determines the final format of the ballot that is prepared for the November 4, 2008 elections." At oral argument, the State Board representative from the Attorney General's Office stated that the City submits ballot items to the County Board, which places those items on the County Board's portion of the ballot and State Board's ballot.

when "inactive" voters were included,[3] thus necessitating 2,582 signatures. In Count I the Firefighters sought declaratory relief requiring the City to count all the signatures on the two petitions and that the Firefighters "were entitled to rely upon the list of registered voters supplied by the Allegany County Board of Elections"; in Count II the Firefighters sought a writ of mandamus and or an injunction requiring the City to count the petition signatures and pass a resolution placing the proposed amendment on the November 4, 2008 ballot or, alternatively, to conduct a special election within 60 days.

The City raised various defenses in its answer, including that the proposed amendment was "an illegal amendment to the Charter of the City" and that "the terms of the amendment to the Charter of the City are patently local legislation and not charter material." Subsequently, the State Board of Elections and County Board filed a Motion to Dismiss; the City filed a Motion for Summary Judgment.

Because of looming deadlines for ballot question submissions, the parties appeared in the Circuit Court for Allegany County on September 9, 2008 for argument and the next day the Circuit Court Judge issued a Memorandum and Order granting the City's Motion for Summary Judgment as well as the Motion to Dismiss filed by the State Board of Elections and County Board. The Judge first addressed the issue of whether the Firefighters were required to obtain the signatures of 20% of "active" voters, as they asserted, or 20% of the sum of "active" and "inactive" voters, as the City proffered, determining that only "active" voters needed to have been considered. He also reviewed the City's refusal to review supplemental signatures and concluded that signatures submitted "after the August 15 determination by the City that there were insufficient qualified voters on the July 25 petition

---

**3.** An "inactive" voter, as opposed to an "active" voter, is one who has been placed on "inactive" status for failing to respond to a confirmation of address notice under Section 3–503(a) of the Election Law Article, Maryland Code (2003, 2007 Supp.).

All statutory references to the Election Law Article are to the Maryland Code (2003, 2007 Supp.), unless otherwise noted.

is not retroactive to the earlier petition." (emphasis in original). The judge did not address whether the subject matter of the petition was appropriate for a charter amendment, although the resolution of this issue could have disposed of the entire controversy, if it were not appropriate.

We granted the Firefighters Petition for Writ of Certiorari to determine whether the number of signatures supporting a petition for a charter amendment can be supplemented by another set of signatures before the deadline for the approval of signatures has expired, and whether "inactive" voters should be included as "persons who are qualified to vote" in municipal general elections. Oral argument was heard on September 15, 2008, and that same day, we issued a Per Curiam Order reversing the judgment of the Circuit Court and remanding the case to that court for further proceedings.[4] We now set forth the reasons for that Order.

## II. Discussion

The issues before this Court are of statutory interpretation. In statutory interpretation, our primary goal is

---

4. That Order stated:

For reasons to be stated in an opinion later to be filed, it is this 15th day of September, 2008,

ORDERED, by the Court of Appeals of Maryland, that the judgment of the Circuit Court for Allegany County granting, for the reasons relied on in its Memorandum and Order of September 10, 2008, the Motion for Summary Judgment filed by the Mayor and City Council of Cumberland and the Motion to Dismiss filed by the Allegany County Board of Elections be, and the same is hereby, reversed; and it is further

ORDERED, that this matter be remanded to the Circuit Court for Allegany County for further proceedings, as necessary, but not inconsistent with, for purposes of determining whether Appellants submitted the requisite number of signatures, the following principles: (a) considering active and inactive voters, as well as the three voters registered only to vote in Cumberland's general elections, in determining the requisite number of signatures; and

(b) treating the Appellants' July 25, 2008 and August 18, 2008, submissions of signatures as a single submission;

and it is further

ORDERED, costs to be divided equally between the Appellees. Mandate to issue forthwith.

always "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Barbre v. Pope*, 402 Md. 157, 172, 935 A.2d 699, 708 (2007); *Gen. Motors Corp. v. Seay*, 388 Md. 341, 352, 879 A.2d 1049, 1055 (2005). *See also Dep't of Health & Mental Hygiene v. Kelly*, 397 Md. 399, 419–20, 918 A.2d 470, 482 (2007). We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " *Barbre*, 402 Md. at 172, 935 A.2d at 708; *Kelly*, 397 Md. at 420, 918 A.2d at 482. *See also Kane v. Bd. of Appeals of Prince George's County*, 390 Md. 145, 167, 887 A.2d 1060, 1073 (2005). If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. *Barbre*, 402 Md. at 173, 935 A.2d at 708–09; *Kelly*, 397 Md. at 419, 918 A.2d at 482; *City of Frederick v. Pickett*, 392 Md. 411, 427, 897 A.2d 228, 237 (2006); *Davis v. Slater*, 383 Md. 599, 604–05, 861 A.2d 78, 81 (2004). If, however, the language is subject to more than one interpretation, or when the terms are ambiguous when it is part of a larger statutory scheme, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, statutory purpose, as well as the structure of the statute. *Barbre*, 402 Md. at 173, 935 A.2d at 709; *Kelly*, 397 Md. at 419–20, 918 A.2d at 482; *Smack v. Dep't of Health & Mental Hygiene*, 378 Md. 298, 305, 835 A.2d 1175, 1179 (2003). When the statute is part of a larger statutory scheme, it is axiomatic that the language of a provision is not interpreted in isolation; rather, we analyze the statutory scheme as a whole considering the "purpose, aim, or policy of the enacting body," *Serio v. Baltimore County*, 384 Md. 373, 390, 863 A.2d at 952, 962 (2004); *Drew v. First Guar. Mortgage Corp.*, 379 Md. 318, 327, 842 A.2d 1, 6 (2003), and "attempt to harmonize provisions dealing with the same subject so that each may be given effect." *Bowen v. City of Annapolis*, 402 Md. 587, 613–14, 937 A.2d 242, 258 (2007); *Magnetti v. Univ. of Md.*, 402

**10**

Md. 548, 565, 937 A.2d 219, 229 (2007); *Clipper Windpower, Inc. v. Sprenger,* 399 Md. 539, 554, 924 A.2d 1160, 1168 (2007).-

The Firefighters argue that the Circuit Court erred by affirming the actions of the City in not reviewing the second set of signatures, because the first set of signatures could not be supplemented, and by determining that the signatures of only 20% of "active" voters, as opposed to the combined total of "active" and "inactive" voters, were necessary to fulfill the petition requirements. The City, conversely, asserts that the Circuit Court correctly decided that the petition could not be supplemented and that both "active" and "inactive" voters should have been included as qualified voters under Article 23A. The City also asserts that the case should be remanded to the circuit court to determine whether the subject matter of the petition was appropriate for a charter amendment.[5]

The Election Law Article does not apply to municipal elections, because an "election" under the Section 1–101(v)(3) Election Law Article, "does not include, unless otherwise specifically provided in this article, a municipal election other than in Baltimore City." Rather, municipal corporations are governed by Article 23A, which, in Section 14 pertaining to petitions to amend municipal charters, states, in pertinent part:

(a) *Petition; resolution of legislative body setting time for referendum.*—Twenty per centum or more of the persons who are qualified to vote in municipal general elections in the particular municipal corporation may initiate a proposed amendment or amendments to the municipal charter, by a

---

5. The State Board filed a brief on its own behalf and that of the County Board also alleging that the Firefighters' claim should be barred for having failed to comply with the 10 day limitations period imposed by Section 12–202(b)(1) of the Election Law Article. We need not address this argument in detail, however, because the Firefighters did file their complaint within 10 days of the petition's rejection on August 18, 2008, because that date, was the "final" determination about which the Firefighters were aggrieved that triggered the 10 day limitations period with which the Firefighters complied. *See Jane Doe v. Montgomery County Board of Elections,* 406 Md. 697, 962 A.2d 342, 2008 WL 5264655 (2008).

petition presented to the legislative body of the municipal corporation, by whatever name known. The petition shall contain the complete and exact wording of the proposed amendment or amendments, and the proposed amendment or amendments shall be prepared in conformity with the several requirements contained in subsections (b) and (c) of § 13 of this subtitle. Each person signing it shall indicate thereon both his name and residence address. Upon receiving the petition, the legislative body is directed to verify that any person who signed it is qualified to vote in municipal general elections, and shall consider the petition as of no effect if it is signed by fewer than twenty per centum of the persons who are qualified to vote in municipal general elections. If the petition complies with the requirements of this section, the legislative body shall by resolution, passed as in its normal legislative procedure, and not later than sixty days after the petition shall have been presented to it, specify the day and the hours for the election at which the question shall be submitted to the voters of the municipal corporation. This may be at either the next regular municipal general election or at a special election, in the discretion of the legislative body. In the event a special election is designated, it shall be within a period of not less than forty days nor more than sixty days after the final passage of the resolution. In the resolution, the exact wording shall be specified which is to be placed on the ballots or voting machines when the question is submitted to the voters of the municipal corporation.

The statute is silent as to whether the number of signatures supporting a petition for referendum of a proposed piece of municipal legislation can be supplemented by another set before the 60 day deadline for the approval of signatures has passed. Section 6–205 of the Election Law Article, which does not apply to municipal elections, *see* Section 1–101(v)(3) of the Election Law Article, on the other hand, does speak to the issue of additional signatures:

(d) *Additional signatures.*—Subsequent to the filing of a petition under this subtitle, but prior to the deadline for

filing the petition, additional signatures may be added to the petition by filing an amended information page and additional signature pages conforming to the requirements of this subtitle.

Whether the absence of the language permitting additional signatures is permissive or prohibitive is the gravamen of the inquiry; does silence signal permission or prohibition?

Pursuant to our tenets of statutory construction, we have construed the absence of prohibition or silence as permissive. In *American Recovery Co., Inc. v. Department of Health and Mental Hygiene*, 306 Md. 12, 506 A.2d 1171 (1986), we were asked to interpret whether former Section 253 of Article 41, Maryland Code (1957, 1982 Repl.Vol.), pertaining to the filing of exceptions to administrative agency decisions, prohibited the Department of Health and Mental Hygiene from filing a response to certain exceptions taken by a company alleged to have violated certain hazardous waste laws. Section 253 of Article 41 permitted adversely affected parties to file exceptions, but was silent as to whether the agency could respond to those exceptions:

> Whenever in a contested case, a majority of the officials of the agency who are to render the final decision have not heard the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision, including findings of fact and conclusions of law, has been served upon the parties, and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to a majority of the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties.

Based upon the fact that "[t]he statute does not prohibit the agency from filing a *response* to the non-agency party's exceptions," we concluded "that the agency did not act improperly in responding to the exceptions." *Am. Recovery Co.*, 306 Md. at 23, 506 A.2d at 1176 (emphasis in original). *See also Chairman of Bd. of Trustees of Employees' Retirement Sys-*

*tem v. Waldron,* 285 Md. 175, 183–84, 401 A.2d 172, 177 (1979) (stating that because former "[S]ection 56(c) does not prohibit a retired judge from practicing law in a jurisdiction other than Maryland," there is "no reason why a retired judge who chooses to receive his pension and desires to practice law for compensation outside of the State need fear reprisal from any Maryland agency"). The absence of prohibition in Section 14 of Article 23A then, under our jurisprudence, signals that supplemental signatures should be accepted, so that the 472 signatures submitted by Firefighters on August 18, 2008 should have been reviewed.[6]

■ We next turn to whether "inactive" voters should have been included as part of the total number of qualified Cumberland voters, because Section 14 of Article 23A speaks only of persons who are "qualified to vote." We have already had occasion to determine whether the phrase "qualified voters," used in an Ocean City Charter referendum provision, included "inactive" voters, when we were faced with the question of whether 128 Ocean City residents who had failed to vote in two previous elections were "qualified voters" that had to be included in the list of voters upon which referenda percentages were to be found. *Gisriel v. Ocean City Bd. of Supervisors of Elections,* 345 Md. 477, 482, 693 A.2d 757, 759 (1997). After noting that " 'having voted frequently in the past is not a qualification for voting, and under the Maryland Constitution, could not be a qualification,' " *id.* at 503, 693 A.2d at 770, quoting *State Election Bd. v. Election Bd. of Baltimore,* 342 Md. 586, 598–99, 679 A.2d 96, 102 (1996), we rejected the argument that the "inactive" voters should be stricken from the list of registered voters, thereby interpreting the term "qualified voters" to include "inactive" voters: "the 128 residents of Ocean City who had not voted in the preceding two general municipal elections, but whose names remained on the

---

6. The representative of the State Board, during argument, noted that if the petition were to be certified it could not be possible for it to be on the November 4, 2008 ballot and would instead only qualify for a special election or the 2010 election, because of the deadlines for the submission of ballot issues.

voter registration list, were not unqualified voters. In no event should their names be removed from the voter registration list." *Id.* at 504, 693 A.2d at 770.

Including "inactive" voters as persons "qualified to vote" is also consistent with our interpretation of the relationship between the terms "inactive" voter and "registered voter," [7] in *Jane Doe v. Montgomery County Board of Elections*, 406 Md. 697, 962 A.2d 342, 2008 WL 5264655 (2008) and *Maryland Green Party v. Maryland Board of Elections*, 377 Md. 127, 832 A.2d 214 (2003). In *Jane Doe*, Doe challenged the legitimacy of a referendum petition that sought to prevent a Montgomery County Bill, adding "gender identity" as a protected characteristic under the County's anti-discrimination laws, from going into effect. In order to determine whether the referendum proponents obtained a sufficient number of signatures, we were asked to interpret whether the term "registered voter" in the Montgomery County Charter, from which the County Board determined the amount of petition signatures needed, should have included "inactive" voters. We emphasized our previous holding in *Green Party*, 377 Md. at 152–53, 832 A.2d at 229, that "any statutory provision or administrative regulation which treats 'inactive' voters differently from 'active' voters is invalid," and concluded that "inactive" voters must be considered "registered voters." *Jane Doe*, 406 Md. at 708–12, 962 A.2d at 348–50, 2008 WL 5264655, * 3.

█ In the present case, the City correctly considered "active" and "inactive" voters when determining the number of

---

**7.** The terms "registered voter" and "qualified voter" are certainly related, because qualified voters who are registered are provided the right to vote, unless disqualified, pursuant to Section 4 of Article 1 of the Maryland Constitution; Section 1 of Article 1 of the Maryland Constitution sets forth the "qualifications to vote," under which a qualified voter must be a United States citizen over 18 years of age and a Maryland resident; "[v]oter registration" under Section 2 of Article 1 of the Maryland Constitution, provides for "a uniform Registration of the names of all the voters in this State, who possess the qualifications prescribed in this Article, which Registration shall be conclusive evidence to the Judges of Election of the right of every person, thus registered, to vote at any election thereafter held in this State."

signatures necessary to constitute 20% of the qualified voters, so that the Circuit Court erred in its contrary ruling. Obviously, the case must be remanded in light of our ruling, although on remand, another issue, seemingly dispositive of the entire case, must be addressed, regarding whether the subject matter of the petition is appropriate for a charter amendment. As we have stated heretofore, if a referendum could not be instituted, any petition would be in and of itself invalid. *See Griffith v. Wakefield,* 298 Md. 381, 390, 470 A.2d 345, 350 (1984) (holding that a proposed charter amendment, which would require resolution of labor disputes, involving county-employed fire fighters, through binding arbitration, is "invalid under Article 11A of the Maryland Constitution").

Because we hold that supplemental signatures should have been reviewed, that "inactive" voters should have been included as persons who are "qualified to vote" and that the circuit court must consider whether the subject matter of the petition is appropriate for a charter amendment, the reversal of summary judgment entered on behalf of the City and reversal of dismissal on behalf of the County Board and State Board with instructions on remand, was mandated by this Court on September 15, 2008.

Concurring Opinion by ADKINS, J., which HARRELL and MURPHY, JJ. join.

I join in the majority opinion except Footnote 5 thereof. I agree that the Firefighters filed their complaint in sufficient time to comply with Section 12–202 of the Election Law Article. I disagree, however, with the majority's citation of *Jane Doe v. Montgomery County Board of Elections,* 406 Md. 697, 962 A.2d 342, 2008 WL 5264655 (2008) in support of that proposition, or with its addition of the word "final" to modify "determination." *See id.* (Adkins, J., dissenting).

Judges HARRELL and MURPHY authorize me to state that they join this concurring opinion.