Dear Maureen A. Neal
You have requested an opinion whether inactive voters should be included in the count of "registered voters" in determining the number of early voting centers that must be established in each county.
In a recent letter of advice, Assistant Attorney General Sandra Benson Brantley concluded that counting registered voters for the purpose of establishing early voting centers is an "official administrative purpose" and therefore voters in inactive status may not be included in the count. A copy of that letter is attached. We agree with that conclusion and make some additional observations.
The number of early voting centers to be established in each county depends on a count of registered voters in that county.See Chapter 445, Laws of Maryland 2009, enacting Annotated Code of Maryland, Election Law Article ("EL"), § 10-301.1(b) (effective October 1, 2009). The Court of Appeals has consistently held that the phrase "registered voters" includes both active and inactive voters. Maryland Green Party v. Maryland Bd. ofElections, 377 Md. 127, 143, 832 A.2d 214 (2003); Doe v.Montgomery County Bd. of Elections,406 Md. 697, 726, 962 A.2d 342 (2008); see also Int'l Ass'n ofFirefighters v. Mayor City Council of Cumberland,407 Md. 1, 13-14, 962 A.2d 374 (2008) (for municipal referendum, "qualified voters" includes both active and inactive voters). However, the Election Law Article elsewhere provides that "[r]egistrants placed into inactive status may not becounted for official administrative purposes including establishing precincts and reporting official statistics." EL § 3-503(d) (emphasis added). The opinions in Green Party,Doe, and Cumberland do not identify or suggest circumstances in which the Court of Appeals would approve a count that excludes inactive voters, but neither do they foreclose *Page 152 
potential application of the "administrative purpose" exception. In our view, therefore, the attached advice letter properly concludes that inactive voters must be counted unless determining the number of early voting centers required in each county is a proper "administrative purpose."
Each of the three cases cited above involved the question of how many petition signatures were needed to qualify a candidate or question for the ballot, where the qualifying number was a percentage of "registered voters" or "qualified voters." GreenParty, 377 Md. at 139-53, ("registered voters"); Doe,406 Md. at 722-23 ("registered voters"); Cumberland,407 Md. at 13-14 ("qualified voters"). In each case, the Court decided that the total upon which the qualifying percentage was calculated should include inactive voters. Only in Doe did the Court address the "administrative purpose" provision of EL § 3-503(d) — and then only briefly in a footnote. Relying upon that statute, the Montgomery County Board of Elections had argued that counting total voters in order to calculate 5% of them (the petition standard) was an "administrative purpose."406 Md. at 725 n. 20. Without fully elaborating its interpretation of the phrase "administrative purpose," the Court rejected the Board's argument.[1] Id.
Thus, it is uncertain how broadly, or narrowly, the Court would construe the phrase "administrative purpose." Absent further guidance, it is not possible to state definitively what the limiting principle may be. However, Doe established at least one boundary on what functions may be encompassed by the phrase. It does not extend, for example, to a count of voters for purposes of calculating a petition standard. 406 Md. at 725 n. 20. On the other hand, as the Court noted, the statute provides two illustrations of what is included *Page 153 
in the phrase — "establishing precincts and reporting official statistics." Id. Additionally, the statute's use of "including" in referencing the latter two purposes does not preclude the existence of other "administrative purposes." See Annotated Code of Maryland, Article 1, § 30.
When establishing precincts, the statute directs election boards to consider only active voters, presumably so that the boards may most effectively allocate available election resources. EL § 3-503(d). A similar purpose is served in counting voters to determine the number of early voting centers needed in each county. EL § 10-301.1(b). Accordingly, it is our opinion that such a count likewise represents an "administrative purpose" under the statute. As explained in the attached letter of advice, there are cogent reasons for distinguishing between active and inactive voters in this context. See pp. 5-6. Just as importantly, counting only active voters for this purpose would not deny those listed as inactive any right belonging to other registered voters.[2]
Douglas F. GanslerAttorney General
Jeffrey L. DarsieAssistant Attorney General
Robert N. McDonaldChief CounselOpinions and Advice *Page 154 
DOUGLAS F. GANSLERAttorney General
DAN FRIEDMANAssistant Attorney GeneralCounsel to the General Assembly
KATHERINE WINFREEChief Deputy Attorney General
SANDRA BENSON BRANTLEYBONNIE A. KIRKLANDKATHRYN M. ROWEAssistant Attorneys General
JOHN B. HOWARD, JR.Deputy Attorney General
 THE ATTORNEY GENERAL OF MARYLAND OFFICE OF COUNSEL TO THEGENERAL ASSEMBLY
 July 20, 2009.
Linda LamoneAdministrator, State Board of Elections
You asked for advice regarding Chapter 445, Laws of Maryland 2009. In particular, you asked whether election officials may exclude voters in an inactive status from the count of registered voters used to determine the number of early voting centers in each county. As discussed more fully below, in my view, the counting of registrants for determination of the appropriate number of early voting centers is an administrative purpose, therefore, election officials may exclude inactive voters from those statistics.
Early Voting
During the general election in November 2008, the voters of Maryland overwhelmingly approved a constitutional amendment to allow for early voting. The amendment altered Article 1, § 3 of the Maryland Constitution to empower the legislature to enact legislation implementing early voting:
 The General Assembly shall have the power to provide by suitable enactment a process to allow qualified voters to vote at polling places in or outside their election districts or wards or, during the two weeks immediately preceding an election, on no more than 10 other days prior to the dates specified in this Constitution.
Acting on this authority, the legislature passed House Bill 1179, which was signed into law by the Governor on May 7, 2009. Chapter 445, Laws of Maryland 2009. *Page 155 
The early voting provision in the Election Law Article now provides, in part, that:
 (1) Each county shall have at least one early voting center established in the county as prescribed in this subsection.
 (2) A county with fewer than 150,000 registered voters shall have one early voting center established in the county.
 (3) A county with more than 150,000 registered voters but fewer than 300,000 registered voters shall have three early voting centers established in the county.
 (4) A county with more than 300,000 registered voters shall have five early voting centers established in the county.
EL § 10-301.1(b) (effective Oct. 1, 2009).
State law additionally states that voter "[r]egistrants placed into inactive status may not be counted for official administrative purposes including establishing precincts and reporting official statistics." EL § 3-503(d). As a result of this provision, the question arises whether the counting of registrants for purposes of determining the number of voting centers in each county is an administrative purpose.
Inactive status of registered voters
The term "inactive status" with regard to registered voters is somewhat of a misnomer in that it implies that a registered voter who simply fails to vote will be placed into inactive status, which is not the case. Rather, placing certain voters into an inactive status is part of list maintenance requirements imposed by State law. EL § 3-101(c); COMAR 33.05.07.01. Under State law, if an election official receives information from the post office "that a voter has moved to a different address outside the State, the election official in the county where the voter most recently resided in the State shall send the voter a confirmation notice informing the voter of his or her potential inactive status." EL § 3-502(c).
If a voter fails to respond to a confirmation notice sent pursuant to EL § 3-502 or fails to take any of the actions listed in EL *Page 156 
§ 3-503(b), [1] and does not vote "in an election during the period beginning with the date of the notice through the next two general elections," EL § 3-502(e)(2)(ii), the election official may remove the voter on the assumption that the voter has indeed moved outside the State. EL § 3-501(3).
Moreover, federal law also requires States to remove voters who move outside the State from their voter registration lists. The federal Help America Vote Act (HAVA) assigned the U.S. Election Assistance Commission (EAC), among other things, the duty to provide guidelines about various federal election standards. 42 U.S.C. § 15501. In July 2005, the EAC addressed HAVA's removal provisions, which include:
 The State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly, including the following: A system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters. Under such system, consistent with the National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.), registrants who have not responded to a notice and who have not voted in 2 consecutive general elections for Federal office shall be removed from the official list of eligible voters, except that no registrant may be removed solely by reason of a failure to vote.
42 USCS § 15483(a)(4)(A) (emphasis added). Interpreting this provision, the EAC issued the following guideline:
 The NVRA contains certain requirements regarding the removal of names from official voter rolls. . . . It also requires the removal of individuals who have moved outside of a given registration jurisdiction, have been sent proper notice, have failed to respond to such notice and have not voted in two consecutive *Page 157 
general elections for Federal office (42 U.S.C. § 1973gg-6 (d)(1)(B)).
"Voluntary Guidance on Implementation of Statewide Voter Registration Lists," U.S. Election Assistance Commission (July 2005) at 11 (emphasis added).
Thus, a registered voter is placed in inactive status only when election officials receive information from the post office that the individual has moved out of State.[2] Once a voter is in inactive status and fails to take certain actions, election officials must remove that individual from the voter list.
Valid Uses of Inactive Status Data
Although election officials are permitted to designate some registered voters as inactive as part of the required process to remove ineligible voters from the voter list, the Maryland Court of Appeals has been explicit that the General Assembly has "no authority to decree that an `inactive' voter is not a `registered voter' with all the rights of a registered voter." Maryland GreenParty v. Maryland Board of Elections, 377 Md. 127, 143 (2003). The Green Party case addressed a statutory provision that excluded from the definition of registered voter, "an individual whose name is on a list of inactive voters." EL § 1-101(mm). As a result of this statutory provision, the signatures of voters in an inactive status were not considered to be valid signatures in support of a petition to nominate candidates. The Court noted that because individuals in inactive status nonetheless remained qualified to vote, they are also entitled to sign petitions.
 [W]e stress that the Maryland Constitution sets forth the exclusive qualification and restrictions on the right to vote in the State of Maryland. . . . Additionally, insofar as a minor political party's only option to nominate a candidate is through the process of submitting nomination petitions, a scheme which improperly invalidates a registered voter's signature on a nominating petition unconstitutionally infringes on the right of *Page 158 
suffrage guaranteed to all qualified voters by Article I of the Maryland Declaration of Rights.
Green Party, 377 Md. at 152.[3]
The legislature subsequently amended the Election Law Article and repealed the provision defining registered voter to exclude individuals who were designated inactive. Chapter 572, Laws of Maryland 2005. That legislation also amended the provisions dealing with inactive voter status to delete the prohibition against counting voters in inactive status for petition signature validation, but left intact the directive that they not be counted for "administrative purposes including establishing precincts and reporting official statistics." Id.
Since its decision in Green Party, the Court of Appeals has confirmed that voters in inactive status have all the rights of a registered voter. In Doe v. Montgomery Co.,406 Md. 697, 726 (2008), the Court emphasized that "there is no room, after our decision in Green Party, for the maintenance of an `inactive' list to define registration status, because both `active' and `inactive' voters are registered voters."Doe addressed the determination by election officials that when calculating the number of signatures needed to petition a local law to referendum inactive voters should be excluded. Under the Montgomery County Charter, petition sponsors must submit a number of signatures from registered voters corresponding to 5 percent of the county's registered voters. In the petition at issue in Doe, election officials announced that the 5 percent benchmark was 25,001 signatures, which was 5 percent of the County's 500,012 "active" registered voters. Including the 52,269 voters in "inactive status," however, would mean that petition sponsors would have needed to submit 27,615 signatures. The Court confirmed that because inactive voters were entitled to sign petitions, excluding them from the denominator of the equation to calculate the 5 percent benchmark effectively lowered the benchmark to a number less than 5 percent required by the County Charter, and thus inactive voters must be included in the *Page 159 
denominator. Id. at 722 — 727. Accord Int'l Ass'n ofFirefighters Local 1715 v. Mayor and City of Cumberland,407 Md. 1 (2008) (confirming that when calculating the number of signatures needed from "qualified voters" for a referendum petition, inactive voters must be included in the calculation).
While it is clear from the holdings in Green Party,Doe and Cumberland that election officials cannot deny voters in inactive status any right of registered voters, election officials may consider the number of voters in inactive status when making decisions about where to allocate election resources. Consistent with EL § 3-503(d), the current practice of election officials is to exclude voters in inactive status from the count of registered voters for administrative purposes. Thus, in determining the location of polling places, which are, among other things, to "be located as conveniently as practicable for the majority of registered voters assigned to the polling place," election officials use statistics of active voters only. EL § 10-101(a)(2)(ii). Election officials also use active voter statistics to allocate voting units. COMAR 33.10.02.07A(1)(a) (local boards are to provide "[o]ne voting unit for each 200 registered voters"). Additionally, election officials use active voter statistics to determine whether to create new precincts or alter precinct boundaries. EL § 2-202(b)(6).
The reason election officials exclude inactive voter numbers from election resource allocation decisions is to ensure that the resources are directed to benefit the greatest number of voters. Data compiled by the State Board of Elections show that only a small number of voters in an inactive status turn out to vote. For example, in the November 2006 gubernatorial election, voter turnout was 53.6 percent statewide, but only 3.1 percent of inactive registered voters voted. In the November 2008 general election, statewide turnout was 72.4 percent, but only 6.9 percent for inactive registered voters.
The legislative history of Chapter 445, Laws of Maryland 2009 is devoid of any indication whether the General Assembly considered inactive voters. Nonetheless, the floor report points out that the bill imposes a funding mandate on local governments. The Fiscal and Policy Note also reveals that the cost to local jurisdictions moving from three early voting centers to five increases from $624,400 to $1,015,800. Unlike the situation in Green Party, excluding an inactive voter from the registrant statistics to determine the number of early voting centers does not deny any right conferred on registered voters; there is no constitutional requirement to count inactive voters for this purpose. The allocation of election resources impacts State and local funding obligations, it does not impact a voter's registration status. *Page 160 
In consideration of these factors, it is my view that counting registrants to implement EL § 10-301.1(b) is an administrative purpose under EL § 3-503(d). Accordingly, election officials may use voter registration statistics that exclude voters in inactive status. Thus, in addition to counting only active registered voters for determining the number of early voting centers, election officials should also take into consideration where the active voters reside in determining placement of the early voting polling places. EL § 10-301.1(e) (directing that "[e]ach early voting center shall satisfy the requirements of § 10-101"; that section requires, among other things, that polling places "be located as conveniently as practicable for the majority of registered voters assigned to the polling place").
Sincerely,
Sandra Benson BrantleyAssistant Attorney General
[1] There is some indication that the Court equated fixing the petition standard with the signature verification process:
 . . . Because the two other official administrative purposes, establishing precincts and reporting official statistics, were preserved in the Statute, while "petition signature verification" was removed from the list, we find the Board's argument that petition signature verification should still be considered as an official administrative purpose unpersuasive.
Doe v. Montgomery County Bd. of Elections,406 Md. at 725 n. 20.
[2] The statute providing for early voting centers mandates only the roughest correspondence between the number of voters in a county and the number of voting centers required. See
EL § 10-301.1(b). Thus, any disparity that might arise between counties with large numbers of inactive voters and those with fewer would be negligible as compared to the disparities contemplated by the overall scheme.
[1] A voter on inactive status "shall be restored to active status" by doing any of the following: submitting a voter registration application, or signing a petition, certificate of candidacy or an absentee ballot application. EL § 3-503(b).
[2] It is possible, however, that an individual who has moved in-state will fail to provide a forwarding address so that election officials are unaware that the person still resides in Maryland. In that case, that individual will be sent a confirmation notice and placed in an inactive status. Where the post office provides a new address for that voter that is in the State, that individual is not placed in an inactive status but is reregistered with the new Maryland address.
[3] In Green Party, the Court remanded the case to the circuit court to determine whether the mandates of federal law require the removal process set out in State law. 377 Md. at 182. On remand, the circuit court found that the removal provisions are mandatory rather than permissive and declared that the State must comply with the removal provisions of both the NVRA and HAVA. 90 Op. Att'y Gen. 133 (2005) (indicating that the final judgment in Green Party requires certain prescribed voter registration list maintenance practices and that the State law conforms to those practices). *Page 161